## LEVI STERN ET AL. v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Negligence—Railroad companies—Maintenance of cattle-guards—Depot grounds—Speed of train.*

1. Where a railroad company is not obliged to fence, it is not obliged to place cattle-guards.
2. Railroad companies are not liable for not inserting cattle-guards at such street crossings as are within their depot grounds, and in use by them, and the public transacting business with them.
3. Where, in a suit to recover for sheep killed by a railroad company, it appears that they entered upon defendant's depot grounds where it was not obliged to fence, the plaintiff must show some neglect of a *statutory* duty on the part of the defendant as a basis of liability.
4. There is no law requiring a passenger express train to run at a rate of speed not exceeding 15 miles per hour past stations.
5. Negligence will not be presumed from the mere fact of accident, which is as consistent with the presumption that it was unavoidable as it is with negligence, and there should be some evidence that it could have been avoided with proper diligence and precaution.

Error to Van Buren. (Buck, J.) Argued June 18, 1889. Decided October 18, 1889.

Negligence case. Defendant brings error. Reversed. The facts, and points of counsel passed upon by the Court, are stated in the opinion.

*Edwards & Stewart (Ashley Pond,* of counsel), for appellant.

*L. A. Tabor,* for plaintiffs.

CHAMPLIN, J. The plaintiffs' sheep strayed and entered upon defendant's depot grounds in the village of Lawton, at a point where defendant was not obliged to maintain a fence. They then went east along defendant's right of

way a distance of nearly 93 rods, where they were run into by a train of defendant's cars, and 34 of them killed.

It was claimed by plaintiffs, but not conceded, but disputed by defendant, that a public street crossed the railroad at a point east of where the sheep entered upon the depot grounds, and that on the east line of this street there had been constructed in time past a spur fence from the fence inclosing defendant's right of way to the track, and a cattle-guard had been constructed at that point. That the fence still remained, and that the cattle-guard had been taken up and removed some years before, was not disputed; but the existence of the public highway crossing the tracks, called "Franklin Street," was a disputed fact in the case. The plaintiffs claimed that the depot grounds extended no further east than Franklin street.

The defendant contended that its station grounds extended further east than the point where the sheep were killed; and it showed that, about 30 rods east of what plaintiffs called "Franklin Street," the company maintained a coal-shed, where coal was almost daily unloaded from cars, and was daily used by the company in supplying coal to its engines. There were several tracks and switches, for the purposes of its business, within the right of way east of Franklin street; two of them extending east of the place where the sheep were killed. The right of way east of the east line of Franklin street was fenced upon both sides, and the public excluded therefrom, and there was no occasion for the public who had dealings with the railroad company to enter upon this portion of defendant's right of way to transact business with it.

The judge instructed the jury that the defendant was not liable to the plaintiffs for the killing of their sheep on account of not having maintained a fence at the point where they entered upon defendant's grounds; but, if they found that there was a public street crossing the track at Franklin

street, then they must determine whether defendant's depot grounds extended further east than such street; and if they found either that Franklin street did not cross such tracks, or, if it did, if defendant's depot and station grounds did extend east of such street, then the plaintiffs could not recover; but if there was a public street crossing the railroad called "Franklin Street," and the defendant's depot and station grounds did not extend east of such street, then it was the duty of defendant to maintain a cattle-guard at that point; and if plaintiffs' sheep strayed east on defendant's right of way, and were killed, by reason of the neglect and failure of defendant to maintain such cattle-guard, then the defendant was liable to plaintiffs for the value of the sheep killed.

After the court had concluded his charge to the jury, the counsel for defendant submitted the following questions in writing, and asked that the jury make special findings thereon, viz.:

"1. Did the plaintiffs' sheep enter defendant's right of way on its station grounds?" The jury answered this question, "Yes."

"2. Did the sheep stray from the place where they entered on the station grounds along the right of way to where they were killed?" The jury answered, "Yes."

"3. Was there a road or street crossing over the right of way, open to public use, between were the sheep entered the station grounds and where they were killed, at the time they were killed?" The jury answered, "Yes."

"4. Did the station grounds, at the time of the accident, extend east of and include the coal-shed of defendant?" The jury answered, "No."

"5. How far, or about how far, east of the coal-shed did the station grounds extend, with reference to where the sheep were struck?" Not answered.

"6. Did the defendant make daily use of its right of way eastward from its station-house, so as to include the coal-shed and tracks running past it, in the business of receiving at its coal-sheds, and distributing therefrom coal to its trains for their use, and also for switching its trains and storing its cars?" The jury answered, "Yes."

It thus appears that the disputed questions of fact as to the existence of the highway crossing, and the extent of the station grounds, were definitely settled adversely to the defendant's claim; and the special findings are consistent with the general verdict in plaintiffs' favor, and the verdict must stand, unless there is a total want of testimony to support some material finding.

But it is claimed by defendant's counsel that there is no testimony to support the finding of the jury that Franklin street crossed the defendant's tracks.

A plat or diagram of the premises was introduced in evidence by the plaintiffs, which witnesses testified was substantially correct. This diagram, taken from the plaintiffs' brief, we insert, viz.:

The witnesses substantially agree respecting this diagram, except that defendant's witnesses show that the location of the

"old depot" was at "f," instead of at "a," as marked upon this diagram. "b" represents Franklin street; "c," a part of the depot grounds, inclosed by a wire fence, as a yard for cattle; "d," the new depot; and "e," the point where the sheep were killed. "g" represents the point where the sheep entered upon the depot grounds of defendant. To the diagram introduced by plaintiffs may be added "h," which represents the location of the coal-shed; "k," which represents a stock-yard used by defendant.

The record states that the counsel for plaintiffs said he would introduce the original plat of the village, which would show that Franklin street was laid out and extended across defendant's right of way; but he did not do so, and no evidence was introduced of a highway legally laid out across defendant's tracks.

It will be seen from the diagram that Franklin street does not form a continuous, straight street; but from the south it appears to end at the depot grounds of defendant, and from the north it approaches the defendant's track directly in front of its stock-yard.

It also appears from the testimony that at some time plank had been laid between the tracks to enable teams to pass to defendant's freight-house, and that the public had used this crossing, more or less, for several years; but the testimony does not definitely locate this crossing, or show that it connected Franklin street on the north with that street on the south of the track, or was used as making a continuous street for travel.

The statute (Laws of 1887, p. 339) creating the liability of railroad companies for neglect to fence their railroads provides:

"Such right-of-way fences shall be provided with suitable connecting fences and cattle-guards at all highway and street crossings, which shall at all times be kept in effective repair, and sufficient to prevent stock of all kinds from passing upon

the track of the railroad at such highway or street crossings."

The sheep having entered upon defendant's depot grounds where it was not obliged to fence, it was incumbent upon the plaintiffs to show some neglect of a statutory duty on the part of the defendant as a basis of liability.

The only neglect claimed under the statute was that of not putting in and maintaining a cattle-guard at what they claimed was a highway crossing, known as "Franklin Street." It became material, therefore, for the plaintiffs to establish the fact that there was a highway or street crossing at the point where they claim the cattle-guard should have been placed. We do not think the testimony establishes that fact. The diagram does not show a continuous street. It is certain that the depot grounds included the cattle-yard, "k," and that extended east of where Franklin street connected with the depot grounds on the south; and railroad companies are not liable for not inserting cattle-guards at such street crossings as are within their depot grounds, and in use by them, and the public transacting business with them. Where a railroad company is not obliged to fence, it is not obliged to place cattle-guards.

A count was inserted in the declaration based upon the liability of the company for negligence in running its train at an excessive rate of speed past the station at Lawton.

The plaintiffs were permitted to introduce the rules adopted by the company for the conduct of its employés in running trains. One of these prescribed that engineers should not run their trains at a speed exceeding 15 miles an hour in passing stations. Another rule required the watchman employed at the station to signal the engineer whether or not the track was unobstructed when the train was approaching the station. On this occasion the watchman gave the signal showing that the track was unobstructed, and the engineer ran the train past

the station at the rate of 30 miles an hour; in both of which respects the plaintiffs claim that the defendant was guilty of negligence.

The accident occurred about half past 6 o'clock P. M., upon a moonlight night. The watchman testified that the track was unobstructed so far as he could see, and there was no testimony which tended to show that the sheep could be seen at the distance of 150 rods, or over, from the depot.

The train which did the killing was a passenger express train, and 30 miles an hour was not an unusual rate of speed for such train. There is no law requiring such trains to run at a rate of speed not exceeding 15 miles an hour past stations. The rules promulgated by the company for the regulation of the conduct of its employés were designed for the protection of passengers, and of persons and property more liable to be exposed to danger at such places than elsewhere.

We do not think that the common-law action for negligence will lie, under the facts of this case. The defendant owed no duty towards the plaintiffs which it failed to observe or perform. The sheep were unlawfully upon defendant's right of way, and it had no reason to expect that they would be there. The testimony fails to show that the defendant did not do all that it could to prevent injury to the sheep after they were discovered upon the track.

We have held that negligence will not be presumed from the mere fact of accident. The fact of accident alone is as consistent with the presumption that it was unavoidable as it is with negligence, and there should be some evidence that it could have been avoided with proper diligence or precaution; in other words, some evidence of negligence other than the mere fact of accident. We do not, however, consider it necessary to enter into a full discussion of this branch of the case, as it is evident from the findings that the jury based their verdict upon the negligence of the defendant in

not observing a statutory duty in the erection of cattle-guards at a highway crossing.

The judgment will be reversed, and a new trial granted.

The other Justices concurred.