# PRICE *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

## Opinion delivered May 27, 1905.

1. NEGLIGENCE—WHEN QUESTION FOR JURY.—Where there was substantial conflict in the evidence upon the issues of negligence and contributory negligence, the questions were properly submitted to the jury upon proper declarations of law. (Page 490.)

2. CARRIER—DUTY TO ACCEPT DRUNKEN PASSENGER.—A railway company is not required to accept as a passenger, without an attendant, one who, from intoxication, is mentally or physically incapable of taking care of himself; but it cannot refuse to accept one who is capable of taking care of himself, and whose presence is not dangerous or hurtful or annoying to his fellow passengers. (Page 490.)

3. SAME—AUTHORITY OF CONDUCTOR.—The conductor of a passenger train acts within the scope of his authority in accepting a drunken passenger, unattended, who is unable to look after himself. (Page 490.)

4. SAME—LIABILITY FOR SAFETY OF DRUNKEN PASSENGER.—If a conductor of a passenger train accepts a person as a passenger, unattended, whom he knows to be intoxicated and unable to protect himself from danger and injury, the company owes him the duty to exercise such care as may be reasonably necessary for his safety. (Page 490.)

5. A carrier, undertaking to carry a drunken passenger, unattended, must bestow upon him such special care and attention, beyond that given to the ordinary passenger, as reasonable prudence demands for his safety, considering any manner of conduct or disposition of mind manifested by the passenger and known to the carrier, or any conduct or disposition that might have been reasonably anticipated from one in his mental and physical condition, which would tend to increase the danger to be apprehended. (Page 491.)

6. CONTRIBUTORY NEGLIGENCE—WHEN NO DEFENSE.—Where a carrier accepts a passenger known to it at the time to be mentally or physically incapable of self protection, and he was subsequently injured while still in that condition, it cannot make the defense that he was guilty of contributory negligence. (Page 491.)

7. RES IPSA LOQUITUR—WHEN DOCTRINE APPLICABLE.—The doctrine that negligence is presumed from the fact of the injury does not apply when the accident or injury, unexplained by attendant circumstances, might as plausibly have resulted from negligence on the part of the passenger as of the carrier, nor to an injury to a pasenger that comes by reason of circumstances and conditions that are personal and

peculiar to him, and not·by reason of any management or condi-
tion of the train, over which the carrier had control; but it· does
apply when the injury is of such nature that it could not well
have happened without the carrier being negligent, or when it is
caused by something connected with the equipment or operation of
the road over which the company has entire control.  (Page 491.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

J. F. Price was killed on the night of December 16, 1898,
by falling from a passenger train of the St. Louis, Iron Mountain
& Southern Railway.  The "cause of fall unknown to jury"
was the verdict of the jury of inquest.  The widow and children
of Price, appellants, sued the appellee, alleging, *inter alia,* that
the proprietor of the Silver Moon Hotel at Texarkana, where
Price was stopping, being aware that he expected to go to
Newport, Ark., to visit his wife, who was then sojourning there,
took Price, who was from intoxication in an insensible condi-
tion, to appellant's depot at Texarkana, and delivered him to the
conductor of the Cannon Ball train, stating to the conductor
that he desired Price to be put off at Newport, and paying his
fare to that point.  The complaint then continues as follows:

"The said conductor received the deceased in such insensible
and irresponsible condition, well knowing the same, and hav-
ing divested him of all his valuables, including about $27 in
money, said conductor took charge of his money, valise and
other valuables, for· which he gave a receipt to said proprietor
of the hotel, and said conductor caused the deceased to be laid
down on the seats near the door of the smoking car of said
train, and there left him, and that the defendant received said
deceased, and undertook to transport, carry and safely deliver
him at Newport; Ark., well knowing the insensible and irrespon-
sible condition of said deceased.

"That, after having deposited the deceased in said smoking
car, the conductor, brakeman and other employees of defendant
on said train paid no further attention to the deceased, and negli-

gently and carelessly failed to exercise any diligence or care what-
ever with respect to said deceased, by reason of which he came
to his death; that just before said train reached the station at
said Cabot, it being then night time, the deceased awoke from
his drunken stupor in a dazed and bewildered condition, and not
knowing or realizing his situation or whereabouts, while in said
drunken and irresponsible condition, arose and without being
warned, cautioned or restrained, as he should have been, staggered
through the door of the car, which was but a few feet distant,
and out upon the platform of said car, the train being then
moving at great rate of speed, and was thrown from said car
to the ground, thereby receiving mortal injuries, from which
he died, and which could and should have been prevented by
the exercise of proper care by the defendant, and that his dead
body was discovered lying upon or near the defendant's railway
track, horribly mutilated, on the morning of the 17th of December
1898.

"That, upon the arrival of said Cannon Ball at New-
port, the said conductor left the valise belonging to said deceased
at the depot at Newport, stating that deceased "was lost some-
where between Little Rock and Newport."

"That deceased at the time of his death was earning a total
income of $4,000 per annum. The plaintiffs were obliged to
expend $500 for the burial expenses of deceased, and by reason
of the wrongs and injuries complained of had sustained dam-
ages in the sum of $10,000, for which they prayed judgment.

The defendant for its answer denied every material allegation
in the complaint, save that it was a corporation and common
carrier, and that the deceased was intoxicated, and alleged con-
tributory negligence of the deceased, and that whatever injuries he
received were due to his intoxication and want of care. There
was a trial at the November term, 1900.

The proprietor of the hotel who put deceased, Price, on
the train testified (so far as his evidence is material here) as
follows:

"I took him in, and he had valise with a quart bottle of
whisky in it. I put him in care of the conductor, and paid his

fare, and gave the remainder of his money to the conductor to take care of until he got home. I told the conductor he was unable to take care of himself. He didn't seem to know anything. There were two seats in the back end of the car where we took him, and, if I remember right, we put him in the end seat and laid him down. I took out his money, and got the conductor to take his fare out. The conductor told me he would take care of him. I said, 'You have to watch him closely. Take care of him.' I opened his valise, and showed him a bottle of whisky, and said, 'He will need a drink or two before reaching Newport, to keep him from getting too nervous on you.' I don't think he knew what was going on in regard to the money; anybody could see he was just like a child. The conductor said: 'Yes, he would see that he would be taken care of all right.' I told him two or three times. The reason I took him down was that I was uneasy, and afraid the man was going to die in my house. He told me he wanted to go to Newport; that his wife and boy were there. I never saw him after I put him on the train. This was after 3 o'clock on the northbound Cannon Ball train. He must have weighed over 200 pounds; was a square shouldered, fleshy, strong man, and looked like he carried his age well. I would judge him to be between 50 and 60, and seemed to be stout and healthy in every way. At that time I did not know the conductor. The deceased walked with me to the depot. Nobody helped me until I came to the train. He fell down a couple of times. I needed help. He fell down from weakness; he was a little stupid and weak. I can't say that I put him on the train before I saw the conductor. I can't say whether the conductor was standing on the platform at the time or not. The conductor and brakeman were standing there, but I am not sure they were on the platform. Somebody pointed out to me the conductor, but I can't swear whether before or after I put deceased on the train. If I am not mistaken, they were on the platform at the time I got on, and helped to put him up there. I think the brakeman helped me, and both were together when I got him on the car. The conversation with the conductor was after I put him on the car. I had not got off. I was standing in the car when he took the money. I had the conversation spoken of with the conductor

inside the car. The man seemed perfectly quiet, not disposed to get up or run around; perfectly content to lie there. That man that helped me on the train I think had on a brakeman's cap. I knew the conductor by his receiving the money.".

The dead body of Price was found about four miles south of Cabot on the right of way of the St. Louis, Iron Mountain & Southern Railway Company. The coroner found the body lying in a diagonal position from the railroad track, the feet toward the track, and the head five or six feet from the track. The tie inspector, who informed the coroner of the death, found the body with head and shoulders in the ditch, and he had drawn the body out of the water. The body was soaked from the shoulder to the waist with water. His left arm and leg were broken, and he was badly bruised about the left side of the head and face. It was shown that the conductor told the agent at Newport "that he had lost a man between there and Little Rock."

On behalf of appellee, the conductor testified (so far as material here), as follows: "I did not see Mr. Ward bringing Dr. Price to the train in December, 1898. I went out as conductor of that train, No. 56. The first I knew of Ward's bringing Price down there was Mr. Ward was brought to me by Mr. Hall, who stated that he had a man whose fare he was going to pay to Newport. He said, "I have got a man; I want to pay his fare to Newport." I said, "All right; why don't you go and buy a ticket?" He said, "I would rather pay you the money. I will show him to you." I got on the steps; Ward going ahead. He said: "This is the man; I want to pay his fare to Newport." I told him the fare was $6.85. The fare was paid, and he said, "He has been with me for three or four days, drunk. He is getting in good shape now, and I want you to take charge of his money, and don't let him buy more whisky. I have given him what whisky I want him to have." He made no request of me, and I made no agreement with him in regard to looking after the old man. Nothing was said about that; not a word about looking after him; nothing except what I have stated. He gave me the money. I took it, and counted it. Mr. Hall was a witness. He told me to give it to him when we got to Newport. He said if he had the money he would probably get off and get another drink. At this time he was sitting up in the south end of the

smoking room. In the course of his trip north he was lying down once or twice. During the trip I would see him frequently, every time I worked the train. I would see everybody on there. Every station we stopped at I went through the entire train, and I saw him on every occasion. He sat in the smoking room quite a while, and I saw him several times sitting in a chair. He passed through the swinging door of the partition, and stepped into the car. I know that twice I saw him in that car. He looked to me like a man that had been on a drunk. He certainly did not seem to be entirely incapable of taking care of himself. I did not see anything in his condition or conduct or anything he did to suggest to me that he needed any special looking after. I saw him twice walk into the car, and look around. One time he had come just inside, and had a conversation with me. This is not unusual for a drunk man. I paid no attention to that. The conversation was between Malvern and Arkadelphia. It was a few words. He said, "You have my money; get me a bottle of whisky." I first missed him just after leaving Holland which is twenty-one miles north of Little Rock and two and three-fourths miles from Cabot. I told the porter to go through the train and search for him. We could not find him. When I found he was off the train, I stopped at the first telegraph station, and wired back that we had lost him. The telegram was as follows:

"12-16-98.

"To C. M. H.

"I am short a passenger. Think he fell off train between McAlmont and Austin. He was very drunk. Think his name is J. F. Price, Newport. Please have trains look out for him.

"BRANDON."

The testimony of other witnesses for appellee tended to corroborate the evidence of the conductor.

Upon motion of plaintiff, the court instructed the jury as follows:

"1. The jury are instructed that a railway company in the transportation of passengers must exercise the highest degree of care, diligence and skill, and that degree of care is the highest degree of care which a prudent man would exercise and which is reasonably consistent with the mode of conveyance and the prac-

tical operation of the road; and whenever the danger increases, the care should increase; and if in this case you find that, as alleged in the complaint, the deceased, Price, was killed by reason of such want of care on the part of defendant, without contributory negligence on his part, then are plaintiffs entitled to recover.

"2.  Culpable negligence is the omission to do something which a reasonably prudent and honest man would do, or the doing of something which such a man would not do under all the circumstances surrounding each particular case; and if you find, from a preponderance of the evidence in this case, that the deceased, Price, came to his death without fault on his part by reason of the culpable negligence of the defendant's servants and agents, then are the plaintiffs entitled to recover.

"3.  If the jury find from a preponderance of the evidence that the defendant accepted and received the deceased, Price, as a passenger on one of its trains in an intoxicated condition and incapable of caring for himself, and that said defendant knew of his condition at the time, then it became and was the duty of the defendant to exercise such high degree of care for his safety and safe conveyance as a reasonably prudent man would do under similar circumstances, and any violation of this duty whereby the deceased was killed, as alleged in the complaint, would give the plaintiffs the right to recover.

"4.  If the jury find from a preponderance of the evidence that, as alleged, the defendant received the deceased as a passenger in an intoxicated and helpless condition, and knew at the time of his condition, then it became the duty of the defendant to exercise any increased care necessary for the proper and safe carriage of the deceased arising from such intoxicated and helpless condition or conduct of deceased, Price, and the railway company is estopped from claiming that by reason of such condition the defendant is absolved from such duty as herein set forth.

"6.  The jury are instructed that contributory negligence is a defense that must be pleaded and shown by a preponderance of the evidence, and that intoxication of itself alone is not contributory negligence, and in order to be guilty of contributory

negligence by reason of intoxication the passenger must be sufficiently in possession of his faculties to know his condition and surroundings.

"7. Whether under all the circumstances the defendant did or did not exercise the degree required of it under the circumstances of this case is the question or issue submitted to you.

"8. When the particular act or thing causing the injury has been shown to have been caused by or under the management of the defendant or its servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care.

"9. If you find from the evidence that the defendant's employees failed to exercise the proper degree of care and attention towards deceased, J. F. Price, which the circumstances required of them under the rule hereinbefore given you, and you further find that such want of care or attention was negligence, and was the proximate cause of the injury to and death of the deceased, then the defendant is liable to plaintiffs. If the jury find for the plaintiffs, the measure of damage is the present actual cash value of the life of the deceased to the plaintiffs as next of kin, or in other words, the actual money or cash benefits that the plaintiffs as next of kin might under the testimony have had a reasonable expectation of receiving, had the deceased not been killed at the time of the accident.

"10. A railroad company is not bound to accept as a passenger on its cars without an attendant one who because of physical or mental disability is unable to take care of himself; but if it voluntarily accepts such a person as a passenger without an attendant, his inability to care for himself, rendering special care and assistance necessary, being apparent or made known at the time to its servants, the company is negligent if such care and assistance is not afforded. The degree of care to be exercised in such a case is that which is reasonably necessary for the safety of the passenger in view of his mental and physical condition."

For the defendant the court instructed the jury as follows:

"1. The court instructs the jury that the mere fact that deceased, Price, came to his death while a passenger on this defendant's railway does not establish a cause of action against the defendant, but the proof must go further and establish by a preponderance thereof that the same was due to some act either of omission or commission upon the part of this defendant, its agents or servants.

"2. The court instructs the jury that if the proof fails to establish the fact that the deceased's death was due to some inattentions on the part of the defendant's servants or agents, which inattentions were due to said deceased, and simply shows that his death is not accounted for, then your verdict should be for the defendant.

"3. The court instructs the jury that contributory negligence is a complete bar to all suits of this character; and if deceased came to his death by reason of any lack of diligence and regard for his own safety or any imprudent acts upon his own part which contributed to his injury, then your verdict should be for the defendant.

"4. The court instructs the jury that defendant's agents and servants in charge of said train were not bound to anticipate that deceased might go out on the platform or expose himself to danger of being thrown from the train; on the contrary, they had a right to presume that he would remain in the car, and if they find from the testimony that he received the injury either by being thrown from the train or by jumping from the train, and that at the time none of the servants or agents of defendant knew of his exposure or attempt to do an act of this sort, then defendant would not be liable therefor, unless (at the time or prior to the accident) the conduct of deceased was such as should have apprised those in charge of the train of the likelihood of his exposing himself to such danger.

"6. The court instructs the jury that the defendant did not owe the deceased the duty of having in his train a man watching over deceased to prevent him from unduly exposing himself to danger, or from taking a hazardous leap from the train, and this is true, notwithstanding he may have been put in charge of the conductor in that condition. And if they find that deceased came

to his death by reason of any unexpected act on his part, either in unduly exposing himself to danger, or in jumping from the train, and that such fact was not known to the servants or agents of defendant at the time, and deceased's conduct at the time prior thereto was not such as to apprise them, then their verdict should be for the defendant.

"9. The court instructs the jury that the defendant's servants and agents are bound as their first duty to attend to their duties in running the train and looking after the general safety of all the passengers, and this defendant was under no·obligation that they should neglect such other duties and stand guard over the deceased to prevent him from doing harm to himself, and if you find from the testimony that at the time the deceased received his injury, the employees and servants of the defendants were engaged about their other duties about the train, concerning the management and care of same, then it would not be an act of negligence that they were not with the deceased at the time he received his fatal injuries, and defendant would not be responsible therefor, unless the proof shows that at the time or prior thereto the conduct of deceased was such as should have apprised the employees of said train of the necessity of remaining near him to prevent his exposure to danger.

"10. The court instructs the jury that no care that defendant owed to deceased required it to anticipate that deceased would attempt to jump from the train; and unless there was something in his conduct at the time of or preceding the accident which apprised the servants or agents of defendant of the likelihood of such an occurrence, defendant is not liable, and your verdict should be for the defendant.

"11. The court instructs the jury that defendant owed deceased no higher duty than to give him that degree of attention as to his safety which a man in his condition would be fairly entitled to receive above that of an ordinary passenger, and that this should be tested by his condition and anything in his conduct that indicated what attention he may have needed; and unless the proof shows that deceased at or prior to the time of his injury showed by his manner or conduct that he was likely to attempt to go out on the platform and jump from the train, or be in

danger of being thrown from the train, and this fact was known to the servants and agents of defendant, defendant would not be liable. The court instructs the jury that, notwithstanding the fact that defendant may have accepted plaintiff as a passenger in an intoxicated and helpless condition, yet, if prior to or at the time of the accident plaintiff had apparently recovered and become capable of taking care of himself, then defendant no longer owed him any special care, and would not be responsible for his injury on that account."

The jury returned a verdict for the defendant.

Plaintiff has appealed.

*O. D. Scott, Charles S. Todd, B. D. Tarlton,* for appellants.

When a carrier receives a passenger, knowing his helpless condition, then the carrier owes such passenger a higher degree of care for his protection and safety. Thomp. Car. Pas. 270; 46 Ark. 194; 18 L. R. A. 602; 23 L. R. A. 758; 6 L. R. A. 240; 14 N. E. 584; 54 Fed. 116; 54 L. R. A. 955. The accident arose from want of such care. 3 H. & C. 596; 11 Wall 129; 90 Tex. 314. The instructions of the court were irreconcilable. 35 W. Va. 501; 67 Ill. 231; 20 Wis. 344; 11 Enc. Pl. & Pr. 190; 54 L. R. A. 957. The question of proximate cause is one for the jury. 14 N. E. 504; 112 Pa. St. 574; 73 Wis. 158; 82 Wis. 613; 110 Ill. 435. The instructions on the whole were confusing and misleading. 43 Ark. 184; 37 Ark. 108; 20 Neb. 39; 22 Neb. 507; 18 Tex. 401.

*B. S. Johnson* and *J. E. Williams,* for appellee.

Negligence is a mixed question of law and of fact. 35 Ark. 602; 38 Ark. 357; 36 Ark. 607; 74 Ark. 503. Instructions should be given hypothetically, and to guide the jury with reference to the particular case. 14 Ark. 530; 31 Ark. 684; 52 Ark. 45; 37 Ark. 238, 580. The appellee was not an insurer of the safety of its passengers. 60 Ind. 12; 65 Miss. 374; 71 Ga. 710; 42 Miss. 607; 47 Ill. App. 533. Ignorance on the part of the conductor or others of the dangerous position of the deceased is a defense. 59 Ark. 185; 35 W. Va. 366; 58 Am. & Eng. R. Cas. 337; 31 *Id.*

54; 9 S. W. 325; 23 L. R. A. 758; 33 L. R. A. 69. Where the
danger to a drunken passenger is known to the carrier, and he is
in a dangerous condition, it must use all reasonable precautions
to avoid it. 36 Upper Can. 369; 55 N. Y. 168; 30 So. 932; 73
Pac. 105; 52 N. E. 747.

WOOD, J. There was evidence to support the verdict. It
was a mixed question of law and fact as to whether appellee was
liable in damages for the death of Price. There was such sub-
stantial conflict in the evidence as to make it entirely proper for
the court to submit the questions of negligence and contributory
negligence to the jury upon proper declarations of law to be
applied by the jury to the facts. *Fisher* v. *W. Va. & Pittsburgh
Ry. Co.,* 23 L. R. A. 758.

The court granted many separate requests for instructions
on behalf of appellants, as well as appellee. It would uselessly
extend this opinion for us to discuss each instruction given at the
instance of appellee to which appellants object. It will suffice
to announce the law applicable to such cases, and then to deter-
mine whether the instructions, as a whole, conform to the
principles announced.

A railway company is not required to accept as a passenger
one without an attendant who, from intoxication, is mentally or
physically incapable of taking care of himself. But it cannot
refuse to receive as a passenger one who is capable of taking
care of himself, and whose presence is not dangerous or hurtful
or annoying to fellow passengers.

If the conductor of a passenger train accepts one as a passen-
ger, unattended, who, from drunkenness, is unable to look after
himself, he, the conductor, in so doing, is acting within the scope
of his authority. It is one of the duties of the conductor to pass
upon the eligibility, so to speak, of those presenting themselves
for transportation.

If a conductor accepts a person as a passenger whom he
knows to be unattended, and knows to be insensible from intoxi-
cation, and thereby unable to protect himself from danger and
injury, the company owes him the duty to exercise such care as
may be reasonably necessary for his safety. While the company

is not an insurer of the person of one who has been received as a passenger in such condition, being cognizant thereof, it is bound to exercise all the care that a reasonably prudent man would to protect one in such insensible and helpless condition from the dangers incident to his surroundings and mode of travel.

The railroad company must bestow upon one in such condition any special care and attention, beyond that given to the ordinary passenger, which reasonable prudence and foresight demands for his safety, considering any manner of conduct or disposition of mind manifested by the passenger and known to the company, or any conduct or disposition that might have been reasonably anticipated from one in his mental and physical condition, which would tend to increase the danger to be apprehended and avoided. If its servants, knowing the facts, fail to give such care and attention, and injury results as the natural and probable consequence of such failure, the company will be guilty of negligence, and liable in damages for such injury.

The question of contributory negligence could not arise where the undisputed evidence showed the passenger to be mentally or physically incapable of self-protection, and where the railway company had knowledge of such condition when it accepted him as a passenger.

Where the evidence is conflicting, and men of fair judgment and reasonable information might reach different conclusions in considering it, then the questions of negligence and contributory negligence must be determined by the jury as matters of fact.

The doctrine of *res ipsa loquitur* does not apply in cases where the accident or injury, unexplained by attendant circumstances, might as plausibly have resulted from negligence on the part of the passenger as the carrier. Nor is it applicable to the death of a passenger that comes by reason of circumstances and conditions that are personal and peculiar to him, and not by reason of any management of, or accident to, or condition in, the train itself, over which the carrier has exclusive control. "The true rule would seem to be that when the injury and circumstances attending it are so unusual, and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equip-

ment or operation of the road, over which the company has entire control, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury."

Authority for the various propositions of law announced above will be found in 4 Elliott, Railroads, § 1644; *Penn R. Co.* v. *Riaordon,* 119 Pa. St. 577; *Barnowski* v. *Nelson,* 15 L. R. A. 33, note; Hutch. Car. § § 800-1; *Transportation Co.* v. *Downer,* 11 Wall. 129; 6 Cyc. 628-9-30; Thompson, Car. & Pass. 209 *et seq.,* 214; *Washington* v. *M. K. & T. R. Co.,* 90 Texas, 314; Wood on Railroads, p. 1559 *et seq.,* 1569; 4 Elliott, Railroads, § § 1577, 302, 1330; Thompson on Car. Pass. p. 270-71, 369; 3 Wood, Railroads, § 1207; *Croom* v. *Chicago, Milwaukee & St. P. Ry.,* 52 Minn. 296, 18 L. R. A. 602, note; *Mo. Pac. Ry. Co.* v. *Evans,* 71 Tex. 361, 9 S. W. 325, 1 L. R. A. 476; *Milliman* v. *New York Central & H. R. R. Co.,* 66 N. Y. 642; 6 Cyc. p. 598, 599, note; *Meyer* v. *St. L., I. M. & S. Ry. Co.,* 54 Fed. 116; *Cinn., Ind. St. L. & Chicago R. Co.* v. *Cooper,* 6 L. R. A. 241; *Kingston* v. *Ry.,* 40 L. R. A. 131, notes; *Fisher* v. *W. Va. & Pittsburg Rd. Co.,* 23 L. R. A. 758; *St. Louis, A. & Terre Haute Rd. Co.* v. *Carr,* 47 Ill. App. 353; *Atchison, T. & S. F. R. Co.* v. *Parry,* 73 Pac. 105; *Putnam* v. *Broadway & 7th Ave. R. Co.,* 55 N. Y. 108; *St. Louis, I. M. & S. Ry.* v. *Martin,* 61 Ark. 549; *Railway Company* v. *Sweet,* 60 Ark. 550; *Railroad Company* v. *Rexroad,* 59 Ark. 180; *Little Rock & Ft. S. Rd. Co.* v. *Duffey,* 53 Ark. 602.

Instruction number eight, given at the request of appellants, is not an accurate and complete statement of the doctrine of *res ipsa loquitur,* as applicable to the facts in this record. But the error presents no ground for reversal, because the instruction was favorable to appellants, and was asked by them, and the verdict was for appellee.

Without expressly approving as precedents all of the instructions in the form given, we think that upon the whole they conform to the law as herein announced, and fairly presented the issues.

Affirm.