# Alabama Gt. S. R. R. Co. *v.* Johnson.

### Injury to Passenger.

(Decided April 13, 1916.   71 South. 620.)

1. **Carriers; Passengers; Injury; Pleading.**—Where the action was by a passenger against a carrier for personal injury, a complaint setting out the relationship and averring in general terms that plaintiff was injured by reason of and as a proximate consequence of the negligence of defendant, is sufficient, since where the gravamen of the action is negligence, it is sufficient merely to aver the facts out of which the duty springs, that the defendant negligently breached such duty, and that as a proximate consequence injury resulted, it not being necessary to particularize the acts of negligence.

2. **Same.**—A count alleging that while plaintiff was passing down the aisle of a car looking for a seat she tripped over a suitcase which projected into the aisle, and fell violently upon the floor, and that such fall and the injury resulting therefrom was proximately caused by the servants of defendant in negligently permitting the aisle of the car to be obstructed, sufficiently averred a breach of duty.

3. **Same; Evidence.**—Where plaintiff specifically pleaded and claimed as damages specially, that she had been mortified on account of her fall and injury, evidence that other passengers on the car were very much amused at plaintiff's predicament, together with what was then said was admissible as part of the res gestae.

[Alabama Gt. S. R. R. Co. v. Johnson.]

**4. Same; Negligence.**—While a carrier of passengers for hire is not an insurer, yet his duty is commensurate with the highest degree of care and to render the carrier liable for injury it must be shown that it or its servant was guilty of some negligence.

**5. Same; Presumption and Burden of Proof.**—The mere fact that a suit-case projected into the aisle of the car, without a showing that it was under the management or control of the defendant or its servant, and that in the ordinary course of events injury to a passenger from falling over it would not have happened but for some negligence attributable to defendant, did not make out a prima facie case of negligence for the jury.

**6. Negligence; Res Ipsa Loquitur.**—The doctrine of res ipsa loquitur involves no substantive rule of law, but means merely that the attendant facts are of such probative force on the question of inferential negligence as to speak for themselves; that is, that they are sufficient to shift the burden of proof.

APPEAL from DeKalb Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Fannie Johnson against the Alabama Great Southern Railroad Company, for damages for injury while a passenger. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GOODHUE & BRINDLEY, for appellant.    E. O. McCORD, and E. P. REED, for appellee.

EVANS, J.—Appellee, plaintiff below, brought her action on the case to recover damages for personal injuries sustained by her while a passenger on one of appellant's trains.

(1) Appellant assigns error upon the overruling of its demurrers to each of the two counts, A and B, of the complaint. Count A sets up the relationship of passenger, and avers in general terms that plaintiff was injured and "by reason of and as a proximate consequence of the negligence of the defendant." Under the liberal system of pleading in this state, it has been repeatedly held that, where the gravamen of the action is the alleged nonfeasance or misfeasance of another, it is sufficient merely to aver the fact out of which the duty springs, and that defendant negligently breached such duty, and as a proximate consequence of such negligence plaintiff suffered injury; it is not necessary to specify the quo modo or particularize the acts of negligence.—*Southern Ry. v. Burgess*, 143 Ala. 364, 42 South. 35; *Birmingham Ry., L. & P. Co. v. Adams*, 146 Ala. 267, 40 South. 385, 119 Am. St. Rep. 27. The duty and its breach were

sufficiently shown, and the demurrers to this count were without merit.

(2) Count B differs from count A in that it undertakes to specify the quo modo, alleging that: "While plaintiff was passing down the aisle of said car, looking for a seat, she tripped over a suit case or piece of baggage projecting into the said aisle of said car, and fell, with great violence, full length upon the floor of said car," and "plaintiff avers that the said fall and the damages and injuries she sustained and suffered were proximately caused by the negligence of the servants or agents of the defendant upon said car, acting within the scope and line of their authority as such, in negligently permitting said aisle of said car to become obstructed by said suit case or piece of baggage as aforesaid."

The words, "negligently permitted said aisle of said car to become obstructed by said suit case," sufficiently aver a breach of duty, and bring count B within the influence of *Birmingham Ry., L. & P. Co. v. Weathers,* 164 Ala. 23, 51 South. 303; and the demurrers were properly overruled.

(3) The court did not err in permitting witness Ruth Johnson to testify that at the time her mother fell the people in the car were much amused at her embarrassing predicament. Plaintiff had specially pleaded and claimed as special damages that she was "humiliated and mortified and caused much bodily pain and mental distress on account of her fall and injury." What was said and done at the time of the fall was part of the res gestæ.

Other assignments present a more serious question. There were but two witnesses, plaintiff and her daughter, Ruth Johnson. Their testimony was without conflict, and was substantially to the effect that plaintiff and her daughter boarded appellant's train at Collinsville, 9:05, on the morning of September 7th, Labor Day, bound for Irondale, a suburb of Birmingham. The conductor was upon the ground and assisted them up the steps. The car was crowded and as they proceeded down the aisle to get a seat plaintiff tripped over a dress suit case or valise and injured herself. Nothing appears from the record to show how long the dress suit case had remained in the aisle, nor who put it there, nor does it appear whether any of the servants of defendant were in the car at or shortly before the time of the accident. The case was allowed to go to the jury on the theory

[Alabama Gt. S. R. R. Co. v. Johnson.]

that a prima facie case was made out by showing an unexplained accident to a passenger. The rule was stated in *L. & N. R. R. Co. v. Jones,* 83 Ala. 376, 3 South. 902, and quoted with approval in *Birmingham Ry., L. & P. Co. v. McCurdy,* 172 Ala. 488, 55 South. 616, that: "Where a passenger suffers injury at the hands of a common carrier, the law, in the absence of all explanation, presumes it was the result of the carrier's fault, and casts on the latter the burden of overturning the presumption."

But the same learned judge, delivering the opinion in *L. & N. R. R. Co. v. Jones, supra,* afterwards qualified his deliverance in that case, saying: "The extract copied above from *L. & N. R. R. Co. v. Jones,* although correct in that case and in many others, is not of universal application. See Hutchinson on Carriers, §§ 799-801; Railway Accident Law, section 376. The principle is, perhaps, stated too broadly."—*Ga. Pac. Ry. Co. v. Love,* 91 Ala. 432, 8 South. 714, 24 Am. St. Rep. 927.

And likewise the same learned judge who quoted with approval the rule in *L. & N. R. R. Co. v. Jones, supra,* in the case of *Birmingham Ry., L. & P. Co. v. McCurdy, supra,* should not be understood as having stated such rule as of universal application, for in *Central of Georgia Ry. Co. v. Brown,* 165 Ala. 495, 51 South. 565, he expressly points out that: "Not in every case of injury to a passenger does a presumption of negligence on the part of the carrier arise from the happening of the injury."

Mr. Hutchinson in his work on Carriers, § 1412, says: "The obligation of the carrier of passengers being to exercise the utmost care and diligence for their safety, it is frequently stated as a rule of evidence, in cases resting upon the question of his negligence, that proof of the accident and of the injury to the passenger thereby, without more, at once creates the presumption of negligence, which it becomes incumbent upon him to rebut. This, however, is hardly a correct statement of the law. The mere happening of the accident, aside from the circumstances by which it has been occasioned or attended, may, in every case, be consistent with the exercise of the highest degree of care and circumspection. Carriers of passengers cannot be held liable for the consequences of accidents against which no human care or foresight could have provided; and, if nothing be shown further than that an accident has happened to his vehicle, from which a passenger had sustained an injury, for aught that would appear, it may have happened from some cause for which the carrier

could not be held responsible. It may have been occasioned by the act of God, which excuses alike the common carrier of goods and the public carrier of passengers, or by the act of a stranger, against which it was impossible for the carrier to guard. And the fact being that, for a large portion of the accidents which occur in the transportation of passengers, and from which they sustain injuries, the carrier is in no wise responsible, it cannot be legally inferred, in any instance from the mere proof of the accident, without showing how it occurred, that it was attributable to the negligence of the carrier or of his servants."

(4) The carrier of passengers for hire is not an insurer; his duty is relative, commensurate, it is true, with the highest degree of care, but not absolute. It must be shown that defendant or its servants were guilty of some negligence.

(5, 6) The record does not show negligence on the part of defendant, or any of its servants, by the mere presence of the dress suit case in the aisle, for non constat but that some other passenger may have set it there, and perchance but a moment before the accident. Had it been shown that some servant of defendant was in the car at the time, instead, on the contrary, on the outside, assisting passengers, it might properly have been left to the jury to say whether the servant was negligent in not being alert enough to discover the obstruction before plaintiff tripped over it. We do not consider that the bare fact of a dress suit case being in the aisle makes out a prima facie case; it is only where it is shown that the thing causing the injury is under the management or control of defendant or its servant and the circumstances attendant upon the accident are in and of themselves of such a character that, in the ordinary course of events, the accident would not have happened but for some negligence attributable to defendant, it can be said a prima facie case of negligence is made out. The doctrine of "res ipsa loquitur" involves no substantive rule of law; it merely means that the attendant facts are of such probative force on the question of inferential negligence as to speak for themselves; i. e., to shift the burden of proof. Here, such was not the case, for no presumption or intendment can, in reason, be indulged where the proof is equally as consistent with the absence, as it is with the existence, of negligence, or, in other words, where it is left very doubtful from all the evidence whether defendant was in fact guilty of any negligence, none, can, per se, be presumed.—*Mc-*

*Grath v. St. Louis Transit Co.*, 197 Mo. 97, 94 S. W. 872; *Levi Stern v. Michigan Central R. R.*, 76 Mich. 591, 43 N. W. 587; *Price v. St. Louis, I. M. & S. Ry.*, 75 Ark. 479, 88 S. W. 575, 112 Am. St. Rep. 79.

In the case of *Stimson v. Milwaukee, L. S. & W. Ry. Co.*, 75 Wis. 381, 44 N. W. 748, the facts were almost identical with the instant case. The appellate court in affirming a judgment of nonsuit said: "It is alleged that the learned circuit judge erred in holding that there was no evidence tending to show negligence on the part of the company. It is plain that it is the duty of the company to see that the aisles of their cars are not obstructed, either by satchels or any other thing, in such a way as to endanger the safety of passengers entering or leaving such cars. This proposition must be admitted to be true, so far as to compel the company and its employees to use due care and diligence in keeping the aisles of the cars unobstructed. The question in this case is whether, upon the evidence given on the trial, it raises a presumption that there was any want of care or diligence on the part of the company or its employees in not discovering and removing the obstruction in question.  *  *  *  The rule stated in these cases is that 'there must be reasonable evidence of negligence, but where the thing [meaning the thing causing the injury] is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' In the case at bar the thing which obstructed the passage in the car was evidently personal baggage of some passenger, and not a thing exclusively under the control or management of the employees of the company; and so the mere fact that it was in the aisle or passageway of the car at the exact time of the accident does not, of itself, raise a presumption of negligence on the part of the employees of the company. There may be a duty on the part of the employees of the company to remove the personal baggage of passengers from the passageways of the cars, but, in order to make it their duty to act, there must be evidence showing, or at least tending to show, that such employees had notice of such obstruction being in the aisle or passageway, or that it had remained there so long before the accident that, in a reasonably vigilant discharge of their duties,

they could have discovered the obstruction before the accident happened, and failed to remove it. The evidence in the case shows that none of the employees of the company were in the car at the time the accident happened, and, in the absence of any proof to the contrary, we must presume that the duty of the employees required them to be at some other place while the train was at the station. All we have, therefore, is the one fact that, at the exact time of the accident, these satchels were in the aisle, and that the plaintiff fell over them and was injured. The personal baggage of passengers is not 'a thing under the management of the defendant and its servants,' within the meaning of the rule stated in the cases above cited; and it therefore becomes necessary for the plaintiff to show by other proof that the company or its servants were guilty of some negligence or want of ordinary care in regard to these satchels. It seems very clear that there is no evidence tending to prove such negligence. There is no evidence showing, or tending to show, how long these satchels had been in the aisle. It is just as reasonable to suppose that some passenger had placed them there after the train had stopped at New London as to suppose that they had been placed there before it stopped. The presumption would rather favor the conclusion that they were placed there after the train had stopped, and while the employees were performing their duty outside the car, for the reason that negligence is not presumed, and if they had been there before the train stopped, they would have been seen by the employees, or some of them, and removed from the aisle. Negligence cannot be predicated upon a state of facts which is as consistent with the exercise of care as it is with negligence. As said in the quotation above, 'there must be reasonable evidence of negligence on the part of the company or its employees,' and in this case there is no such reasonable evidence. The nonsuit was properly granted."

Again in the case of *Burns v. Penna. R. R. Co.*, 233 Pa. 304, 82 Ann. Cas. 1913B, 811, it is said:

"Under these facts, there was no presumption of negligence. The rule is that where a passenger is injured by anything done or left undone by the carrier, or its employees, in connection with the appliances of transportation, or in the conduct and management of the business relating to the same, the burden of proof is upon the carrier to show that such injury did not result from the negligence. But to cast this burden upon the carrier, it must be

shown that the injury complained of resulted from something improper or unsafe in the conduct of the business or in the appliances of transportation.—*Thomas v. R. R. Co.*, 148 Pa. 180 [23 Atl. 989, 15 L. R. A. 416] ; *Ginn v. R. R. Co.*, 220 Pa. 552 [69 Atl. 992] ; *Sutton v. R. R. Co.*, 230 Pa. 523 [79 Atl. 719.] The appliances of transportation referred to in these cases mean the road-bed, tracks, cars, engines, and all other machinery and equipment furnished by the railroad company and used in connection with the conduct and management of its business. A dress suit case belonging to a passenger is not such an appliance. * * * The mere fact that the personal baggage of a passenger is in the aisle of a car at the exact time of the accident does not, of itself, raise a presumption of negligence on the part of the employees of the railroad company. While it, no doubt, is the duty of the employees of a railroad company to remove the personal baggage of passengers from the aisles of cars, they must, in order to make it their duty to act, have notice that such obstructions are in the aisle, or the obstruction must have remained there for so long a time before the accident that, in the exercise of due care, they would have discovered it before the accident occurred."

Our attention is invited by appellee to the case of *Besier v. Cincinnati, N. O. & T. P. Ry. Co.*, 152 Ky. 522, 153 S. W. 742, 43 L. R. A. (N. S.) 1050. There the court uses this language : "We are not prepared to hold that the evidence will allow the appellant to recover on the ground that appellee was guilty of negligence in allowing the valise to remain in the aisle until she was injured by falling over it ; for, according to Booth, who alone testified on that point, the valise did not remain in the aisle where it was placed by the owner more than five minutes before the accident occurred, and, as shown by all the testimony, during that interval the conductor and brakeman of the train were not in the car at all, but were on the outside of the train, directing and assisting passengers to get thereon. Being thus engaged in the performance of their necessary duties, it is manifest that they did not know, and by the exercise of ordinary care could not have known, of the obstruction of the aisle by the valise."

It is true the plaintiff testified that the car was very much crowded, and necessary made somewhat dark." She also testified that it was 9 :05 in the morning when she boarded the train ; and appellee urges for our consideration whether a reasonable inference may not be drawn that the servants of appellant failed to

use due care in not anticipating probable mishaps from the darkened condition of a crowded car; in other words, whether a reasonable inference of negligence is not deducible therefrom, requiring its presentation to the jury. Whatever of cogency there may be in this phase of the matter, it would necessarily be addressed to the count of general averment, count A, as count B, in setting up the quo modo, counts upon some other specialization of negligence, to-wit: "In negligently permitting said aisle of said car to become obstructed by said suit case or piece of baggage."

There was no evidence that the car was entering a tunnel or under a shed, and it will hardly be seriously contended that the utmost degree of human care and foresight would have suggested the precaution of lighting the lamps at 9 a. m. to relieve the somewhat darkened condition of a crowded car.

It follows from what we have said that, there being no presumption or inference of negligence attributable to appellant, the trial court was in error in refusing to give the general affirmative as requested by appellant both as to counts A and B. A judgment will accordingly be entered, reversing and remanding the cause.

Reversed and remanded.