## Illinois Central Railroad Company et al. v. Jesse R. Mc-Collum.

1. VERDICT—*when not excessive.* In an action on the case for
personal injuries, a verdict of $11,000 is held not excessive where
the evidence showed serious and permanent injuries and large ex-
penditures in seeking to obtain a recovery.

2. MEDICAL EXPERT—*manner in which opinion of, should be
elicited.* A medical expert should not be permitted to give his
opinion predicated upon statements made to him or upon the testi-

mony given in open court as he has heard and considered it, but such an expert should be required to give his opinion from hypothetical questions put to him while upon the witness stand.

Action in case for personal injuries. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded. Opinion filed November 27, 1906.

CHARLES L. CAPEN, for appellant; JOHN G. DRENNAN, of counsel.

WELTY, STERLING & WHITMORE, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This cause has been three times tried by jury. Each trial resulted in a verdict against both the defendants. The damages awarded on the first trial were $7,000; on the second, $10,000; and upon the last, $11,000. A judgment was rendered upon the second verdict, which was reversed upon an appeal therefrom to this court, because of errors committed by the trial court in its rulings upon the evidence pertaining to the cause, nature and extent of the plaintiff's alleged injuries. 122 App. 531.

The evidence upon the last trial, so far as it related to questions other than the amount of the damages to be awarded, was practically the same as upon the second trial. The questions of law now raised and argued by counsel for appellants, as to their liability to respond in damages, were decided adversely to appellants upon the former appeal and we are content to abide by the conclusions then reached and announced.

Hence, upon the present record, the only questions remaining for our determination are such as relate to and affect the amount of the verdict. Unless it is clear that the sum awarded is excessive under the evidence, or that the jury was improperly influenced

Illinois Central R. R. Co. v. McCollum.

by passion, prejudice or partiality, or misled by errors of the trial court, in its rulings upon the evidence or instructions affecting the damages, we would not be authorized in disturbing their finding thereon.

The evidence adduced by appellee tends to show that as the result of the accident he was badly bruised about the head and body, and that he suffered considerable pain in his leg, shoulder and back; that Dr. Cantrall, who examined him shortly after the accident, discovered a bruised place extending almost entirely across his abdomen; that shortly after the accident he had a partial passage of the bowels, but that for some five days thereafter his bowels failed entirely to operate, during which time, upon the prescription of his physician, he took large doses of calomel and castor oil, which resulted in a movement of the bowels on the fifth day after the accident; that he remained in bed for about two weeks, during which time he suffered much pain in his head and back and was troubled with nausea and vomiting; that some two months after he was injured he undertook to pursue his former occupation as a school teacher, but was unable to continue for the reason that such work aggravated his nervous condition and caused insomnia; that from the day he was injured until the time of the last trial, he had never had a natural operation of the bowels, and that he had expended at that time about $400 for medical treatment and medicines.

The evidence tends to further show that at the time of the accident, appellee was twenty-nine years of age, weighed 152 pounds, and was strong, vigorous and active; that he had never been ill nor required the attention of a physician; that since that time he had been constantly afflicted with headaches, shooting pains through the back and abdomen; frequent nausea, loss of appetite, insomnia, excessive nervousness, impairment of memory, and emaciation; that

he had been unable to engage in active work of any kind without suffering great and exhausting fatigue, and that at the time of the last trial he weighed but 128 pounds; that, in short, he was suffering from what is termed "traumatic neurasthenia," accompanied by paresis or partial paralysis of the bowels.

The evidence shows that at the time of the trial appellee's condition of health was deplorable. If the approximate cause of such condition was the injuries received by him in the collision, and it was reasonably certain that the same would be permanent, the damages awarded by the verdict, although unusually large, cannot be said to be manifestly excessive. As was said in the former opinion of this court, in determining these vital questions, the jury was necessarily guided largely by the testimony of medical and surgical expert witnesses, given in the form of answers to hypothetical questions. Upon the last, as upon the former trial, the evidence of this character was in sharp conflict, that adduced by appellants tending to show that the condition of appellee was partially if not wholly due to other causes than the injuries received by him at the time of the collision; notably the alleged excessive doses of calomel administered by Dr. Cantrall; and further that such condition was not necessarily permanent.

It appears from the testimony of Dr. Cantrall, that he examined and began to treat appellee upon the day of the accident, and continued to for about seven months thereafter, and that his diagnosis and subsequent treatment of appellee was based upon, determined and continued in the light of frequent examinations, both subjective and objective in character. He further testified that he heard appellee testify on the preceding day of the trial. He was then asked, and answered, the following questions:

"Q. Taking into consideration your knowledge

of the case as attending physician, and assuming his condition to be now as he described it yesterday, and assuming his condition in the meantime since you left there as he described it, state what in' your opinion is his condition as to being permanent or curable?

A.   I believe his condition is incurable.

Q.   Assuming that, and taking into consideration the condition in which you found him when he came to your office, August 24, 1903, and taking into consideration your knowledge of his case as attending physician until the February following, and assuming his statements in evidence, yesterday, concerning his condition since then and his treatment to have been true, and assuming the statements he made with reference to all the matters pertaining to his condition, what in your, opinion might have been the cause of his present condition?

A.   His injury might have been caused by the injury he received in the wreck.''

Dr. S. L. Chapin testified that he assisted Dr. Cantrall in the case, and that after Dr. Cantrall removed from Saybrook, witness took charge of it. He then described the course of treatment followed by him, and its effect. He was then asked:

''Q.   In your opinion, or have you an opinion, as to whether or not this condition, as you have described it, is permanent or whether it will be cured?

A.   From the history of the case and the action of the case, I am inclined to think it is permanent.''

Dr. Mammen testified that he had examined appellee at the request of Dr. Cantrall about two years prior to the trial, and again just prior to the second trial, and also during the present trial; that the examinations were both subjective and objective. He further testified that he had heard the testimony on the preceding day, of appellee, Dr. Cantrall and Dr. S. L. Chapin. He was then asked:

''Q.   Taking into consideration what you know of the case from your personal examination, and as-

suming the statement made by Jesse McCollum in his direct evidence; and the statements made by Dr. Chapin and Dr. Cantrall relating to his case, and the history of it from the time Dr. Cantrall began to treat it; assuming those things to be true as testified to by those gentlemen, I wish you would state what in your professional opinion is the matter with Jesse McCollum?

A. I think he is suffering from traumatic neurasthenia.''

Dr. Ford testified that he had examined appellee before each of the three trials, and that he had heard appellee, Dr. Cantrall and Dr. Chapin testify; whereupon he was asked:

''Q. Now taking into consideration what you know of the case, from these examinations you have made, and also assuming the statements made by Jesse McCollum in his testimony with reference to his condition and the condition he has been in from time to time since the 24th of August, 1903, and assuming the statements he made with reference to his treatment since then and also assuming to be true the statements he made with reference to his condition prior to the 24th of August as being true, state to the jury in your professional opinion and assuming the testimony of Drs. Cantrall and Chapin to be true as far as relates to his condition and treatment, what is the matter with Jesse McCollum?

A. I should call his condition a case of neurasthenia; if the statements as given by these persons is true, my opinion is he is suffering from traumatic neurasthenia.

Q. Assuming the testimony of Jesse McCollum and of Drs. Cantrall and Chapin to be true, so far as relates to the facts, and eliminating their professional opinion from their testimony, and taking into consideration also what you know of the case from your personal examination, what in your professional judgment might cause the condition he is now in?

A. It might be caused from a direct injury; it might be caused from a severe nervous shock; mainly

from these two; the probabilities are that he will never fully recover.''

Dr. C. E. Chapin testified that he had examined appellee before the last and the present trials; that on both occasions he inquired of him as to his sensations. The witness was then asked:

''Q.  What did you observe with reference to his condition on these two occasions, the disease and his condition the last time as compared with his condition at the first examination?

A.  On the first examination took the objective symptoms;  *  *  *  he gave me a history of the past and how he felt at that time;  *  *  *  was able to see very little difference in the objective symptoms between this last time and the first time; have seen him in court and at the last trial; heard his direct examination yesterday and Drs. Cantrall's and Chapin's evidence to-day.

Q.  Assuming what Jesse McCollum said about his condition now, and his condition in the past, since the 24th of August, and assuming what he said about his condition prior to that time to be true, and assuming what Dr. Cantrall and Dr. Chapin said about the facts in the case, eliminating what professional opinions they gave, I wish that you would state what, in your opinion, is the matter with Jesse McCollum; and taking into consideration your personal knowledge that comes from the examinations which you have described?

· A.  In my opinion, he is suffering from traumatic neurasthenia, or in plain English, nervous prostration; the result of an injury—brought on as the result of an injury; the symptoms of traumatic neurasthenia differ from those of ordinary neurasthenia only in the comparative suddenness with which they begin to develop; the objective symptoms I have already stated were brought out on my examination; the subjective you have to rely on the patient to bring out.

Q.  Assuming the testimony of Jesse McCollum, relating to his condition at the present time, and the condition he has been in since the 24th of August,

1903, and his testimony relating to the treatment, to be true, and assuming also what Dr. Cantrall and Dr. Chapin said about the facts relating to his condition and his treatment to be true, and taking into consideration your personal knowledge of the case, what you have learned by your examination of Jesse McCollum and having seen him, what is your professional opinion as to whether or not he will get well, or whether or not he is permanently afflicted?

A. It would be impossible for any one to say absolutely whether he would or wouldn't get well; doubt very much whether he will ever be entirely well."

Dr. Bath testified that he had prior to each of the trials thoroughly examined appellee, and that he had heard part of his testimony, as well as that of Drs. Cantrall, Chapin and Winters. He was then asked and answered the following questions:

"Q. Assuming or taking into consideration what you know of the case personally, and assuming that what Jesse McCollum said concerning the facts of his condition as it has been since that time, and assuming further he was a well, healthy man prior to that time, and assuming further, that on the 24th day of August between nine and ten o'clock, he was in a railroad wreck in which he received certain injuries to the body (describing them), and assuming what Drs. Cantrall, Chapin and Winter said about the facts relating to the case and their treatment of it, as testified to by them on the witness stand, eliminating from their testimony their professional opinion, what, in your opinion, is the matter with Jesse McCollum?

A. In my professional opinion he is suffering from traumatic neurasthenia, induced by partial paralysis of the bowels.

Q. What in your opinion might be the cause of that condition?

A. The injury he received in the railroad wreck.

Q. What in your opinion is his condition as to being permanent or otherwise?

A. I believe his condition to be permanent."

Upon the following day, upon motion of appellee, the foregoing questions to and answers of Dr. Bath were stricken from the record and excluded from the jury. Dr. Bath was then recalled and after re-stating that he had heard a portion of appellee's testimony and that of Drs. Cantrall, Chapin and Winter, was asked and answered the following questions:

"Q. Assuming that on the day of the wreck, the 24th of August, Jesse McCollum was in a railroad wreck where a car on the Illinois Central ran into the passenger coach in which he was riding on the Lake Erie & Western road; the coach in which he was riding was thrown over on the side in that wreck and he received the following bruises and injuries to his body (describing them), and, assuming further, what Jesse McCollum said as to the facts in his case, that is, assuming what he said in his testimony was true, relating to his condition from that time on and the treatment he had taken, and assuming further that prior to this accident he was a well man, and assuming that the testimony of Dr. Chapin, Dr. Cantrall and Dr. Winter to be true, so far as it relates to the facts of his condition and the treatment, excluding from their testimony any professional opinion they may have given, and assuming all those things to be true, what in your judgment is the matter with Jesse McCollum?

(Defendants object for all the reasons given heretofore.)

Q. And taking into consideration what you personally know of the case, from the examination you have made, state what in your opinion, is the matter with Jesse McCollum?

A. I should say he is suffering from traumatic neurasthenia."

Timely and sufficient objections were made and exceptions preserved to the rulings of the court as to the admissibility of each of the foregoing questions and answers.

It will be observed that the testimony of Drs.

Mammen, Ford, S. L. Chapin and Bath, was based, in part, upon the assumption of the truth of the testimony of other witnesses, including appellee, and that the facts which it was claimed were established by such testimony were not incorporated, hypothetically or otherwise, in the question. We are of opinion that in this respect the questions as propounded to said witnesses were improper under the rule laid down in Elgin Traction Co. v. Wilson, 217 Ill. 47, where the court said: "It is complained that Dr. Strum, a witness for the appellee, was allowed to state his opinion as a medical expert, not based on a hypothetical state of facts, but, in part, upon the testimony of the appellee as witness, as the doctor heard and construed her testimony. A physician or a surgeon who has treated a patient may express an opinion as to the physical condition of such patient based on information gained while so administering professionally for the affliction, or a physician may testify as an expert from information obtained from a physical examination of the person who is the subject of inquiry. If the opinion of a physician is desired on the case made or claimed to be made by the testimony produced on the hearing, he should not be permitted to state his opinion based on the conclusion arrived at by himself as to the case made by the evidence as he heard it and gave it weight. The proper course is to state hypothetically the case which the party producing the witness thinks has been proved and to ask an opinion based on such hypothetical case. The jury, who are the judges as to what has been proven, may then apply the opinion of the expert, if in their judgment the state of case on which it was based had been proven. To permit the expert to base an opinion on the testimony as he construes and has weighed it would be to permit him to exercise the functions of the jury, and, in a sense, decide the whole issue for them." See also, Tumalty v. Parker, 100 App. 382; Shoemaker v. Elmer, *supra;* Rogers on Expert Testimony, §26, 29.

It will be further seen that in several instances the opinions of the expert witnesses were predicated upon the assumption of the truth of statements made by appellee either to them personally or while he was testifying, and further that Drs. Mammen and C. E. Chapin heard the direct evidence only of appellee. In the form in which the questions were put to the respective witnesses it is impossible to determine to what extent the conclusions of the witnesses were based upon subjective or upon objective examination of appellee, to what extent upon appellee's testimony while upon the stand, or to what extent upon the testimony of other experts who testified.

It was proper to form the questions based upon the testimony of appellee, but the facts which his testimony tended to prove should have been incorporated in the questions, so that each question would have been complete in itself. In other words, the hypothetical facts which there was evidence tending to prove, should have been specifically detailed in each of the questions. It was not competent for the physicians who treated or examined appellee to testify as to their conclusions or opinions as to his ailments or physical condition so far as they were based upon his narration as to the cause or history of his ailment and its progress. Stevens v. People, 215 Ill. 592.

While the diagnosis by a physician of the ailment and condition of his patient must of necessity be formed to some extent from what is called a subjective examination, to render the opinion of the physician derived therefrom competent evidence in a court of justice, such statements of such patent only should be considered when they relate to his sufferings and symptoms at the time of the examination.

It should have been assumed in the questions that all the hypothetical facts were true. This was omitted to be done in several instances.

Expert evidence should be received with great caution and the established rules as to the form of ques-

tions and admission of testimony should be strictly followed. Such testimony is said to be "sufficiently dangerous when carefully circumscribed." Shoemaker v. Elmer, 58 Atl. Rep. 940 (N. J.); Rutherford v. Marris, 77 Ill. 397; Sterns v. Ry. Co., 76 Mich. 591; Elliott on Ev., sec. 1047; Jones v. Village, 88 Mich. 598. And this is especially true as to that of physicians and surgeons. Jones v. Village, *supra;* Shoemaker v. Elmer, *supra.* It is fair to assume that by far the greater part of the sum awarded as damages in the case at bar, was predicated upon the testimony of the expert physicians that in their opinions appellee's condition was permanent. Damages of this character can only be recovered when it is reasonably certain that they will inevitably follow. If it is only probable or is uncertain, they cannot be taken into consideration. Hutch on Car., sec. 805; Wrisley v. Burke, 203 Ill. 250; 3 Suth. Dam., 944; 1 Id. 121; 12 A. & E. Enc. Law, 450.

The errors above indicated were so clearly prejudicial to the rights of appellants as to necessitate a reversal of the present judgment, and the remandment of the cause for another trial.

*Reversed and remanded.*