## Valberg Junget, Appellee, v. Aurora, Elgin & Chicago Railway Company, Appellant.

### Gen. No. 17,871.

1. NEW TRIAL—*newly-discovered evidence.* Newly-discovered evidence is not cumulative where only expert opinions, but nothing directly affirmative, has been introduced in evidence in regard thereto, and where defendant in such case, having used due diligence, discovers a new witness who will testify that plaintiff had

436 APPELLATE COURTS OF ILLINOIS.

Junget v Aurora, Elgin & Chicago Railway Co., 177 Ill. App. 435.

been suffering from a disease, alleged to have been caused by an accident, previous to such accident, a verdict for damages will not be allowed to stand.

2. EVIDENCE—*of expert, based on subjective symptoms.* The opinion of a medical expert who has not treated plaintiff, but made an examination of her condition solely with a view to testifying as an expert, is not admissible when based on subjective symptoms which are purely voluntary and within control of plaintiff, as it rests on no other basis than the truthfulness of plaintiff, and she cannot be permitted to make self-serving evidence for herself.

3. EVIDENCE—*of medical expert.* Where a medical expert states that he got the history of plaintiff's case before he examined her, and that his answers to the hypothetical questions assumed that such questions were true and were based on that and upon the history given him by plaintiff, where he has made the examination solely for the purpose of testifying, failure to strike out such answers is reversible error.

4. EVIDENCE—*speculations as to outcome of disease.* The opinion of a medical expert witness as to the tendency of a disease of plaintiff, or that certain results are liable to happen, where they are merely speculations as to the outcome, are prejudicial error.

5. EVIDENCE—*of plaintiff's refusal to permit examination admissible.* The refusal of plaintiff to permit an examination by a physician appointed by defendant or the court is a fact which the jury may properly consider and which may be brought to its knowledge either by asking plaintiff in the presence of the jury if she will submit to such examination, or by proving her refusal out of the jury's presence so to furnish the best evidence in her power as to the character and extent of her injuries.

Action in case for personal injuries. Appeal from the Municipal Court of Chicago; the Hon. JOHN R. CAVERLY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed February 13, 1913.

HOPKINS, PEFFERS & HOPKINS and B. F. RICHOLSON, for appellant.

JAMES L. BYNUM and EDWARD MAYER, for appellee; BERNHARDT FRANK, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an action to recover damages for personal injuries claimed to have been received by Valberg Junget, appellee, while she was a passenger on one of the cars belonging to the appellant. The jury awarded her $3,000, and judgment was entered on the verdict. We are asked to reverse this judgment on the ground that the amount is excessive, and for errors hereinafter referred to.

It is argued that the evidence proves that appellee was not seriously injured, and that from the nature of the accident she could not have received the injuries of which she complains. There was testimony tending to show that appellee is suffering from a cystic tumor of one of the ovaries, with attendant pains and suffering. Appellant denies that the accident produced this condition.

On the evening of August 11, 1910, appellee in company with her sister, Laura, and a young man by the name of Reed, boarded one of appellant's trains bound for the village of Maywood. The train in question consisted of three heavy interurban cars. The seats of the cars were leather upholstered, with springs beneath, and the backs of the seats were the same. The tracks were laid upon a foundation of gravel covered with cinders, then packed down. The accident occurred in the village of Forest Park, on appellant's line. The train had stopped at Desplaines avenue at the station platform, than started up and proceeded two or three hundred feet west at a speed estimated by some passengers as a little faster than a walk, and by others as much faster. At this point the wheels of the first car and the front trucks of the second car left the rails and ran along over the ties for a short distance, testified to as about 50 or 55 feet, before stopping. While thus running, the north or right hand wheels of the front truck of the first car gradually sank into the packed cinders, so that when the train came to a stop the front car leaned to the north at an angle estimated at from 15 to 30 degrees. Many passengers

438    APPELLATE COURTS OF ILLINOIS.

Junget v Aurora, Elgin & Chicago Railway Co., 177 Ill. App. 435.

testified that the stopping of the car was gradual, without any forward or sidewise lurching, and that they slid slightly in their seats while the train was stopping. Appellee, with her friends, was on the north or right hand side of the first car, towards the rear. Appellee sat facing west, in the direction the car was going, next to the car window, and Reed sat in the same seat, next the aisle. The seat forward was turned to face easterly, and appellee's sister, Laura, sat alone in that seat, leaning backwards and facing appellee.

Appellee testifies that when the accident happened she was thrown against the side of the car and that Reed was thrown onto her; that she was pinned up against the side of the window, and could not get up until Mr. Reed got up first. Reed, called as a witness for appellee, testifies that he has no recollection of this. His statement is, "nothing happened to me more than simply that when the car left the track we were all jarred around." The conductor testified that there was apparently a panic among the passengers.

Immediately after the accident appellee and her friends arose from their seats and went down the aisle from the first car into the second car of the train, and at that time appellee was laughing and joking. Shortly thereafter appellee alighted from the train, walked about 300 feet down the track to a fruit stand at Desplaines avenue without any assistance, then walked 200 feet into a nearby park, called Forest Park. The party there entered an emergency hospital, where Laura, the sister, lay down. While there appellee still laughed and joked. The attending physician at the hospital examined sister Laura, and while he was doing so Reed and appellee left the hospital and walked around the grounds of the park for half an hour and stopped in one of the shows. Upon returning to the hospital the attending physician offered to examine appellee to ascertain if she was injured, but he testified that she said, "there is nothing the matter with me." This is corroborated by the nurse, although de-

nied by appellee. Later on she claimed to have a bruise on her leg.

Appellee introduced evidence of her mother and aunt, and a doctor who treated her testified as to the condition of appellee after the accident. Considerable expert testimony was heard for both parties as to the possibility of the injury appellee may have received from such an accident as above described resulting in or producing a tumor of the ovary. Appellee's witness, Dr. Lovejoy, testified that he found evidences of this tumor present the morning after the accident.

We have stated briefly the facts touching the accident, not for the purpose of determining whether or not such an accident did produce the condition from which appellee is suffering, but rather as showing the importance of the controverted question of fact, as to whether or not appellee was suffering from this tumor prior to the time of the accident. This point becomes important in connection with the next point of appellant, namely, newly discovered evidence. Upon the motion for a new trial, the attorneys for appellant presented the affidavit of Mrs. Nellie L. Butler. In this affidavit Mrs. Butler says in substance that she had a close acquaintance with appellee and that upon a certain occasion in December, 1909, when she stayed all night with appellee, appellee showed her the condition of her bared abdomen and stated that she (appellee) was suffering from a tumor or abscess in her female organs, and that appellee on this occasion applied medicines with a vaginal douche, and that such medicines were used in the treatment of this condition. It is argued by counsel for appellee that this evidence is merely cumulative, and therefore not sufficient ground for a new trial; but we are referred to no place in the record where there is any evidence that appellee was suffering from the tumor before the time of the accident. True there is argument and expert opinion as to the fact, but nothing directly affirmative.

As to the question of due diligence on the part of the
attorneys for appellant, both attorneys who tried the
case filed affidavits relating at great length the things
they had done in attempting to ascertain the previous
history of appellee, with special reference to her phys-
ical condition; that an investigator had interviewed
Mrs. Butler prior to the trial, and that Mrs. Butler
had not given them any information until after the
trial had terminated. An additional affidavit made by
Mrs. Butler was filed, in which Mrs. Butler admits that
she gave the investigator for appellant no information
when she was first approached; and she explains this
by saying that she was friendly to appellee and did
not wish to say anything which might prejudice her
claim, but that after the trial she concluded that it
was her duty to tell the attorneys all she knew about
the matter.

If the allegations contained in the affidavit of Mrs.
Butler are true, and if it should be a fact that appellee
was suffering with a tumor and vaginal trouble for
some time prior to the accident, then this verdict
should not stand. We are of the opinion that the ends
of justice would be better served by granting a new
trial, so that appellant may present the evidence of
this witness to the jury for consideration.

It is claimed that many errors were committed by
the trial court in rulings on medical evidence, and es-
pecially in refusing to strike out various portions of
appellee's medical testimony. A large number of in-
stances are presented for our consideration, but we do
not think it necessary to detail these. As there must
be a new trial, such errors, if any, will probably not
occur again. One such ruling was the refusal of the
court to strike out the answer of Dr. Adams, testify-
ing as an expert, as to the shrinking of the patient and
as to the expression on her face, on the ground that
these matters were subjective. We think that this
should have been stricken out. Dr. Cox also testified

practically to the same matter, indicating that his opinion was partially based upon subjective symptoms. Such answers have been held to be ground for reversal, as permitting physicians to give answers based upon subjective symptoms or those matters within the control of the patient. Shaughnessy v. Holt, 236 Ill. 485.

In Greinke v. Chicago City Ry. Co., 234 Ill. 564, the Supreme Court, on page 572, has stated the rule very clearly, after stating that subjective matters elicited by an attending physician are competent, as follows:

"No such safeguards, however, surround him when he is being examined by an expert whom he has employed to examine him and to give evidence in his case which is about to be tried in court. To permit the injured party, while undergoing an examination by an expert in his employ, by jerks and twitches, by a pressure of his hand, by turning his toes in or by dragging one of his legs when walking, to thus make evidence for himself, and then to permit his expert to go before the jury and bolster up and strengthen by his opinion the self-serving testimony thus manufactured by the injured party, would open up the door wide for the grossest fraud, which might work upon his adversary the most palpable injury. * * * but what we do intend to hold is, that a physician who has not treated the injured party but who has made an examination of the injured party solely with a view to testify as an expert, should not be permitted to express an expert opinion to the jury based upon subjective conditions, and then be allowed to fortify his opinion by stating to the jury acts of the injured party which could have been purely voluntary and under the control of the injured party, and which may rest upon no other basis than the truthfulness of the injured party."

This rule is too well established to require support by other citations.

Dr. Cox, the expert, stated that he got the history of appellee's case before he examined her, and then stated that his answers to the hypothetical questions assumed

that the hypotheses were true, and that his answers were based upon that and upon the history given him by appellee. A motion was made to strike out his answers, which was denied. This was clearly reversible error. Dr. Cox was not an attending physician, but had made his examination solely for the purpose of testifying as an expert. In Chicago Union Traction Co. v. Giese, 229 Ill. 260, the Supreme Court, after a lengthy discussion of the matter, held such a ruling to be reversible error. Such also was the ruling in Illinois Cent. R. Co. v. McCollum, 130 Ill. App. 267.

Physicians were also permitted to testify as to the "tendency" of the disease, and that certain results were "liable" to happen. Other answers were permitted indicating merely a speculation as to results. To permit doctors to speculate as to the outcome is clearly prejudicial error. Lauth v. Chicago Union Traction Co., 244 Ill. 244. Other errors are argued, which it is not necessary to discuss. The case was extremely close on the facts as to the origin, history and extent of the conditions appellee claimed to exist. It therefore was very important that rulings by the trial court should have been free from error. Errors which ordinarily may be considered harmless may, in a case like this, manifestly affect adversely the interests of one or other of the parties.

It is also urged that error was committed in sustaining an objection by appellee's counsel to a question put to appellee as to whether she was willing to have a physician employed by appellant examine her, and also in sustaining the objection to a question put to appellee as to whether she was willing to be examined by a doctor appointed by the court. While conceding the aptness of the opinion of the Appellate Court of the Fourth District in the case of Cole v. City of East St. Louis, 158 Ill. App. 494, where such a ruling was held not to be prejudicial, yet we are inclined to give more weight to the decision rendered

in Schlechte v. Chicago Elec. T. Co., 157 Ill. App. 181, and also Sertaut v. Crane Co., 142 Ill. App. 49. In the last mentioned case the court, speaking through Justice Adams, said:

"if plaintiff's refusal so to do (permit an examination) is a fact proper to be considered by the jury, as has been held and is recognized (by the Supreme Court) * * * then the fact of refusal must be brought to the knowledge of the jury either by asking the plaintiff in the jury's presence whether he will submit to an examination, or asking him out of the jury's presence, and if he refuses, by producing before the jury proof of his refusal. Manifestly, there is no practical difference in the two methods, so far as the effect on the minds of the jury is concerned. On the hypothesis that a plaintiff is honest and his injuries unfeigned, and that he has nothing to conceal, why should he refuse to submit to an examination? We are of opinion that the refusal of the court to allow the plaintiff to be asked whether he would consent to an examination was prejudicial error."

In the Schlechte case, *supra,* above cited, this point is discussed at considerable length, with a review of apparently all of the decisions in this state touching it, and the opinion concludes:

"The refusal of the trial court to allow the question to be answered by the plaintiff left the jury in uncertainty on the material point, whether plaintiff himself was willing to submit to an examination and so furnish the best evidence in his power as to the character and extent of the injuries for which he is seeking compensation."

For the reasons above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*