The opinion of the court was delivered by
This is a suit brought by the plaintiff in error, plaintiff below, against the defendant in error to recover damages on account of injuries claimed to have been suffered in consequence of the negligence of the defendant in error. On the 26th day of March, 1892, the plaintiff filed his complaint in the district court of Oklahoma county against the defendant, alleging the incorporation of the defendant; that it was running a railroad train through Oklahoma City, in this territory; that on the 29th day of February, 1892, the plaintiff contracted with the defendant to convey two car loads of cattle from its station of Purcell to Oklahoma City, for which the plaintiff agreed to pay the defendants; that as a part of this contract, the plaintiff was to have transportation for himself between said points; that the defendant railroad company agreed to transport the plaintiff from Purcell to Oklahoma City upon the caboose attached to the freight train in which the plaintiff's cars of *Page 514 
stock were shipped, so that the plaintiff would be able to care for the stock during transportation between said points; that under said contract, the plaintiff shipped his cars of stock on the defendant's road, and became a passenger thereon between said points; that when the said defendant's train, on which the plaintiff was a passenger, was nearing Oklahoma City on the night of February 29, 1892, the plaintiff, being in the caboose attached to said train for the accommodation of passengers, the agents and employes of the defendant in charge of the train, negligently stopped the train about half a mile south of Oklahoma City, and that the caboose on which the plaintiff was riding, was stopped upon and directly over the bridge, which was about twenty-five or thirty feet in elevation above the ground; that the night was very dark, and that the conductor in charge of the train came to the plaintiff while the car was stopped upon the bridge, and negligently informed him that the train had arrived at Oklahoma City; whereupon the plaintiff, relying upon the information imparted to him by the conductor, went upon the platform of the caboose in which he was riding, to alight from said train.
That owing to the extreme darkness of the night the plaintiff was unable to see that the car was standing upon the bridge, but supposed the same to be standing at the station at Oklahoma City, and in attempting to alight from the car, and owing to the darkness that everything looked black, that plaintiff supposed that the car was the usual distance from the ground, and supposed that the blackness he perceived was coal cinders, and he stepped off the platform of the caboose, whereupon he fell to the ground, a distance of twenty-five or thirty feet from the car; that there were no lights on the platform or steps of the car at the time he attempted to alight.
The plaintiff further alleged that he was without *Page 515 
negligence on his part in attempting to so alight, and that his fall from the car was wholly occasioned by the carelessness and negligence of the agents and employes of the defendant in charge of the train, and that by reason of said fall the plaintiff was greatly and permanently injured and disabled.
In answer, the defendant averred that the train upon which the plaintiff was riding by virtue of the said contract was a freight train, and that the danger, as plaintiff well knew, was more upon a freight train than upon a passenger train, and that the injury to the plaintiff was not caused by any negligence on the part of the defendant, or its agents or employes, and that the plaintiff was guilty of negligence on his part, which was the direct cause of the injury to the plaintiff complained of; that the plaintiff was guilty of negligence in this, that he took passage upon a freight train, and went to sleep upon said train, and that the train having stopped the plaintiff, without any notice from the agents of the defendant in charge of the train that the train had stopped at the station, and without asking any of the agents or servants of the defendant in charge of the train whether the train had stopped at the station, in the darkness of the night aroused himself from sleep, and with a long "prod-pole" in his hand voluntarily went out of the caboose in which he was riding, and without making any inquiry to ascertain whether said train had stopped or whether it was standing on the bridge or embankment, voluntarily jumped from the train while the train was standing on the bridge and was thereby injured; that the plaintiff failed to use the pole which he had in his hand to ascertain whether the train was standing on the bridge or on the level ground; that such negligent conduct on the part of the plaintiff was the sole cause of the injury, if the plaintiff was injured at the time and place mentioned *Page 516 
in his complaint. To this answer the plaintiff replied by a general denial, and alleging that he was illiterate, and did not know the character of the contract he had signed. A trial was had upon these issues by a jury.
Special questions were submitted to the jury and returned into court signed by the foreman in behalf of the jury, as follows:
1. "Ques. Did the plaintiff ship the stock from Gainesville, Texas? Ans. Yes."
2. "Q. Is Purcell in the Indian Territory? A. Yes."
3. "Q. Did the plaintiff sign the contract at Purcell, introduced in evidence? A. Yes."
4. "Q. Did the plaintiff ship the cattle to Oklahoma City? A. Yes."
5. "Q. Did the train stop south of the station at Oklahoma City, and south of the switches and sidetracks at said station? A. Yes."
6. "Q. Did the train stop where it did for the purpose of switching the plaintiff's cattle to the stock yards? A. Yes."
7. "Q. Was the train on which the plaintiff was riding a freight train? A. Yes."
8. "Q. Was the plaintiff asleep on the train between Norman and Oklahoma City? A. Yes."
9. "Q. When did the plaintiff wake up from his sleep? A. After the train whistled for Oklahoma City."
10. "Q. Who waked plaintiff up? A. Mr. Speed."
11. "Q. Did the plaintiff get up and put on his overcoat immediately after he was awakened? A. Yes."
12. "Q. Did the plaintiff then say to the witness, Speed, 'Where are we at?' A. No."
13. "Q. Who told the plaintiff 'they are setting your cars out at the stock chute,' if anyone? A. Mr. Speed."
14. "Q. Did the conductor say anything to the plaintiff *Page 517 
after he was awakened, and before he went out of the caboose? A. No."
15. "Q. Who was the conductor of the train, in charge of the train? A. Hamrick."
16. "Q. Who told the plaintiff to get off the caboose at the time he got off? A. No one."
17. "Q. Did the plaintiff tell anyone he was going to get off the caboose before he did get off.. A. No."
18. "Q. Was anyone with the plaintiff when he got off the caboose? A. No."
19. "Q. Did any one see the plaintiff get off the caboose? A. No."
20. "Q. Did the conductor know that the caboose was standing on a bridge? A. No."
21. "Q. If the plaintiff had remained in the car until the train got up to the station, would he have been injured? A. No."
22. "Q. Did the plaintiff do anything when he was on the steps of the caboose to ascertain whether the train was standing on a bridge or on the ground? A. No."
23. "Q. Did the plaintiff have a 'prod-pole' in his hand while he was on the steps of the caboose? A. No."
24. "Q. Did the plaintiff do anything with the prod-pole to ascertain the distance from the car to the ground? A. No."
In addition to the findings of fact here recited, evidence had been adduced to show the contract for the shipment of cattle, which provided that the plaintiff should load and unload the stock, feed, water and attend to the same at his own expense and risk while they were in the stock yards of the company and while on the cars and at the feed and transfer points or where they were to be unloaded; that when the whistle sounded for the station at Oklahoma City, the conductor came down into the car from the 'lookout,' and was looking over his papers, preparing for the *Page 518 
arrival at the station; that the train stopped at the point it did with a view of unloading the plaintiff's stock. There were no lights in the car, or on the platform or steps of the car, except the lantern which the conductor had inside, on his arm, looking over his papers. This was about half past 9 o'clock at night, and the night was very dark; that the plaintiff passed on out upon the steps of the car, looked down from the steps; everything looked black, and, supposing that the ground was the usual distance from the steps of the car, and that the blackness which he saw was the coal cinders in the yard at Oklahoma City, he stepped off, and fell a distance of twenty-five or thirty feet, severely injuring himself.
He testified that his purpose in stepping off the car was to carry out, in good faith, his portion of the contract.
The caboose had been left standing over the bridge, twenty-five or thirty feet in height, immediately south of the defendant company's yards and depot grounds at their station in Oklahoma City, where plaintiff's stock was being switched to the stock yard, as aforesaid.
That neither the conductor nor other person inside the car knew of the plaintiff's fall at the time it occurred, but they still kept on their preparations to alight, and the conductor, going out with them to assist them to alight from the car, supposing that the car was standing in the yard, first ascertained that the caboose was standing over the bridge; that the plaintiff had fallen in his attempt to alight from the train. Whereupon, the plaintiff was taken up from his position and conveyed to the hotel, and there cared for at his own expense. At the conclusion, the jury rendered a general verdict in favor of the plaintiff for damages to the amount of two thousand dollars. *Page 519 
And on November 17, 1893, the defendant filed its motion for a judgment on the special findings of the jury, which motion is as follows:
"And now comes the above named defendant and moves the court to render judgment in its favor and against the plaintiff upon the special findings of fact returned by the jury herein, the general verdict of the jury to the contrary, notwithstanding."
After argument the court sustained the motion setting aside the general verdict in favor of the plaintiff, and rendered judgment against plaintiff, and for costs, upon the special findings of fact made by the jury.
The plaintiff thereupon filed his motion to set aside the judgment of the court, and the answers of the jury to the special interrogatories, and to questions thirteen, fourteen and twenty-two, and to grant the plaintiff a new trial, which motion was overruled by the court. The plaintiff thereupon filed his petition in error in this court, making various assignments of error, all of which for the purpose of argument in this cause, were included in the fifth assignment of error, to-wit:
"That the court erred in setting aside the general verdict of the jury in favor of the plaintiff in error on the special findings of fact, on the motion of defendant in error, after the facts so produced in evidence had so sustained the allegations of the petition."
A very different case would have been presented for the determination of the court than that upon which it actually passed if the evidence had supported the allegations of the petition.
The special findings of fact show, that the plaintiff had shipped stock from Gainesville, Texas; that the train stopped at the place where it did for the purpose of switching plaintiff's stock to the stock yards; that he was asleep until the train whistled for Oklahoma City, when he was waked up by Mr. Speed, who *Page 520 
though an employe of the company as a civil engineer, had nothing to do with the management or running of the train and was himself a passenger; that the conductor did not say anything to the plaintiff either before or after he was awakened and before he went out of the caboose; that no one told the plaintiff to get off the caboose at the time; on the contrary, having been told by Mr. Speed that the cars had stopped to switch his cattle, he must have been aware that the caboose was not at the depot, and that the train had stopped for the transfer of cars alone. The plaintiff told no employe, agent or servant of the company that he was going to get off the caboose, nor did any one see him get off. The conductor did not know that the caboose was standing on the bridge.
There were no lights, building or platform at the place were the plaintiff got off to indicate a depot or any provision for alighting, or a safe place at which to alight. The plaintiff would not have been injured if he had remained in the train; upon getting out of it he did nothing to ascertain whether the train was standing on the bridge or on the ground, although he had a "prod-pole" in his hand, and could, by the exercise of slight care, have ascertained that the car was not upon solid ground.
It has been repeatedly held that in order to entitle the plaintiff to recover, he must himself have been free from negligence. Was he in fact so? The night was exceedingly dark, the plaintiff went out of the caboose and upon the platform upon his own motion and without notice from the servants or agents of the defendant, and without making any use of the means at his command to learn where the car was or what position it was in. The slightest use of his eye sight would have informed him that he was not at the depot; the use of the "prod-pole" in his hand would have *Page 521 
informed him that he was not at a place where it was safe for him to alight.
The announcement to the plaintiff and passengers by the servants and agents of the company that they had arrived at the station would have justified the plaintiff in presuming that the place where the train was then stopping was a safe and proper place at which he might alight, but in the absence of such notice it is difficult to understand how negligence can be imputed to the defendant. If passengers, without exercising even slight care, walk off the railroad train at any point where the train may stop, in the exigencies of the traffic in which the railroad company is engaged, upon what principle can the railroad company be held liable for damages? The negligence of the plaintiff himself, in such circumstances, is the cause of the injury. The stopping of a cattle train at a distance from the railroad depot for the purpose of transferring and switching cars of cattle into the stock yards, is one of the ordinary incidents of traffic upon railways. It is a usage which the shipper of cattle upon a particular train must be aware of, and of which he must be required to take notice. Nor are railroad companies required at such times to give special notice to every passenger not to get off, and under such circumstances, if a passenger gets off in the darkness without notice, and at a point which he must know is away from the depot, he certainly does so at his own risk.
It is the duty of passengers to be watchful and guarded and not to endeavor to alight, without notice from agents or servants of the company in charge of the train. If they attempt to leave the train in the darkness of the night at a distance from the station, without notice, they must assume the liability of such loss as they may suffer in consequence thereof.
In this case the plaintiff did not exercise the ordinary *Page 522 
care by which he could have avoided the injury, nor can we see that the defendant was guilty of any negligence. A large part of the freight traffic of railroad companies must necessarily be carried on at night. The character of this traffic, in which long trains are employed, requires that stoppages be made at unusual points. All these matters belong to the common usage, and custom of railway traffic, and are matters of which notice must be taken by such persons as see fit to avail themselves of the passenger facilities which are afforded upon trains of that character. (Chicago Alton R. R. Co. v. Becker, 76 Ill. 31;Frost v. Grand Trunk R. R. Co. 92 Mass. 387; Mitchell v.Chicago G. T. Ry. Co. 16 N.W. Rep. 388; Davis v. LehighValley R. R. Co. 19 N.Y. Sup. Ct. 516; Nichols v. Chicago W.M. Ry. Co. 51 N.W. Rep. 364; Nagle v. California S. R. R. Co. 25 Pac. Rep. 1106; Beach on Contributory Negligence, § 161;Smith v. Georgia Pac. R. R. Co. 41 A. E. R. R. Cases, 143.)
Plaintiff cites in his argument ch. 17, § 38, of the Statutes of Oklahoma, 1893, which provides that:
"When fare is taken by any railroad corporation for transporting passengers on any mixed train of passenger or freight cars, and on any baggage, wood, gravel or freight car, the same care must be taken, and the same responsibilities and duties assumed by the corporation as for passengers on passenger cars."
It is, however, contended by the defendant in error that this statute can have no force or effect when applied to interstate contract in the rules of law, regulating the rules of commerce, if it attempts to impose upon the carrier any additional burden to which is imposed upon the carrier by the general rules of law.
It is not necessary to determine this contention. The rule here announced is applicable to all persons who are entitled to the rights of passengers upon railway trains. It simply requires that the plaintiff *Page 523 
should not, by his own negligence, contribute to the cause of the injury.
It is contended by the plaintiff in error that the court erred in setting aside the general verdict and in entering up judgment upon the special findings of fact made by the jury.
It is provided by the Code of Civil Procedure, ch. 66, § 754, of the Statutes of Oklahoma, that:
"The provisions of this Code do not apply to proceedings in actions or suits pending, when it takes affect. They shall be conducted to final judgment or decree, in all respects, as if it had not been adopted; but the provisions of this Code shall apply after a judgment, order or decree, heretofore or hereafter rendered to the proceedings to enforce, vacate, modify or reverse it."
This action was begun March 26, 1892, and the section of the Civil Procedure before recited went into force in August, 1893. The proceedings in the cause up to final judgment in the district court were governed by the Code of Civil Procedure of 1890, and the construction placed upon them by the supreme court of the state of Indiana, from which state that Code was adopted.
The findings of fact were made by the jury that the plaintiff was told by Mr. Speed that "they are setting your cars out at the stock chute." The plaintiff was thus informed that the train was not at the depot. It was further stated by the jury that the train stopped where it did for the purpose of switching the plaintiff's cattle to the stock yards at Oklahoma City, to which point the plaintiff had shipped them. It was further found that nothing was said to the plaintiff by the conductor in charge of the train, and that he was not told to get off the train by anyone in charge of the train; that he got off the train of his own motion, and would not have been injured if he had remained on the *Page 524 
train, and that he got off the train in the dark without making any effort to discover where he was.
It will thus appear that the defendant was not guilty of negligence in stopping the train where it did, but that the stoppage was in the discharge of its duty. We do not think the contention can be sustained that in getting off the train at his own motion at a place other than the depot, in the dark without lights, notice or inquiry, and with no attempt to find out where he was, the plaintiff exercised the care which a reasonable and careful man should have exercised, and may be required to exercise, before claiming damages which result from the consequences of such an act. The plaintiff was not a cripple. And he had in his hand a "prod-pole" by which he was especially enabled at the time to ascertain the position of the train. His failure to make use of any means whatever to guard against accident shows the want of ordinary care. And yet the absence of such care on his part is that negligence on his part which precludes a recovery at law. The plaintiff was not entitled to recovery, if he was himself guilty of negligence.
In order to justify the jury in finding a general verdict for the plaintiff it was necessary that they should have found the plaintiff's injuries were caused wholly by the negligence of the defendant in error, and that he should not himself have contributed to them by any negligence of his own. The finding of facts was thus inconsistent with the general verdict in favor of the plaintiff, and the defendant was entitled to judgment, notwithstanding the general verdict. (Jewett v.Neech, 101 Ind. 289; Indianapolis v. Cook, 99 Ind, 10;Pennsylvania Co. v. Galventine, 77 Ind. 322; Howe v. Young,16 Ind. 312; Gripton v. Thompson, 32 Kan. 367.)
The judgment of the court below is affirmed.
All the Justices concurring. *Page 525