## WINFREY v. MISSOURI, K. & T. RY. CO.†

(Circuit Court of Appeals, Eighth Circuit. March 4, 1912.)

No. 3,482.

1. CARRIERS (§ 305*)—INJURY TO PASSENGERS—NEGLIGENCE—PROXIMATE CAUSE.

Where an intoxicated passenger alighted from a north-bound train at his destination, and then entered on the track where he remained when he was struck by a south-bound train about 20 minutes later, the negligence of the trainmen on the north-bound train in failing to see that he was safely removed from the train at his destination was not the proximate cause of his death, and, in the absence of evidence of failure of the trainmen on the south-bound train to give the statutory signals and keep a proper lookout, there could be no recovery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1132, 1136–1139, 1245–1246; Dec. Dig. § 305.*]

2. NEGLIGENCE (§ 141*)—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

An instruction in an action for the death of a passenger struck by a train after he had alighted, which correctly explains the meaning of contributory negligence, and which states that, if the death of decedent resulted "in any degree" from such contributory negligence, there can be no recovery provided such negligence contributed proximately to the injury, correctly charges on contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

3. NEGLIGENCE (§ 80*)—CONTRIBUTORY NEGLIGENCE—STATUTORY MODIFICATION.

The rule that any negligence of a plaintiff directly contributing to his injury complained of precludes a recovery, however great the negligence of defendant may have been, has not been modified by Comp. Laws Okl. 1909, §§ 1149, 2938, 2940, making every one responsible for an injury occasioned another by his want of ordinary care, except so far as the latter has, by want of ordinary care, brought the injury on himself, and declaring that the degrees of diligence and of negligence are slight, ordinary, and gross.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 84; Dec. Dig. § 80.*]

4. APPEAL AND ERROR (§ 273*)—INSTRUCTIONS—EXCEPTIONS—REVIEW.

The rule that an exception to a charge must call the judge's attention to specific phases claimed to be erroneous, so that he may correct them if he desires to do so before the jury retires, must be applied practically with a view of facilitating review, and where in an attempt to take an exception a general reference to a topic discussed in a charge is made, and the topic constitutes a definite part of the charge clearly distinguishable from and not involved in other parts, the exception is sufficient to require review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1620–1630, 1764; Dec. Dig. § 273;* Trial, Cent. Dig. §§ 256, 257, 689, 690, 694–696, 965.]

5. APPEAL AND ERROR (§ 273*)—INSTRUCTIONS—EXCEPTIONS—REVIEW.

Where a large part of the charge in an action for the death of an intoxicated passenger consists of a consideration of the subject of decedent's voluntarily putting himself in a condition of intoxication or danger, and the question is variously commented on in view of some particular phase of the testimony bearing on it, an exception "to the proposition of deceased voluntarily putting himself in a condition of in-

toxication * * * or danger as not being warranted by the evidence" is too general, and will not be considered on writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1620–1630, 1764; Dec. Dig. § 273;* Trial, Cent. Dig. §§ 256, 257, 689, 690, 694–696, 965.]

**6. CARRIERS (§ 281*)—INTOXICATED PASSENGERS—CARE REQUIRED.**

Where a passenger is so intoxicated as to be physically unable to care for himself, the trainmen, knowing of his condition, must bestow such care on him as is reasonably necessary for his safety; but, where a passenger is not in such a state of intoxication as renders him unable to care for himself, or where the trainmen do not know of his intoxicated condition, no special care for his safety is required.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1093–1097, Dec. Dig. § 281.*]

**7. APPEAL AND ERROR (§ 882*)—INVITED ERROR—RIGHT TO COMPLAIN.**

Where an action for the negligent death of a passenger was tried on the theory that decedent's contributory negligence would defeat a recovery, and no suggestion was made that the theory was inapplicable to any phase of the case, any error in giving an instruction on contributory negligence because of submission of the issue of last clear chance was invited or acquiesced in, and was not reviewable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

**8. CARRIERS (§ 348*)—PASSENGERS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.**

An instruction in an action for the death of an intoxicated passenger alighting at his destination from a north-bound train, and entering the track where he remained when struck by a south-bound train about 20 minutes later, which deals with the subject of the carrier's liability for injury to a drunken passenger known by trainmen to be in a dangerous position, and helpless, and which states that the carrier is liable if it fail to exercise reasonable care to prevent injury, and which declares that a man cannot voluntarily place himself in a condition whereby he loses such control of himself as a man of ordinary prudence in the possession of his faculties will exercise, thereby contributing to an injury to himself and then require of one ignorant of his condition recompense therefor, is sufficiently favorable to plaintiff on the issue of voluntary drunkenness.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1407; Dec. Dig. § 348.*]

**9. NEGLIGENCE (§ 88*)—PERSONS UNDER DISABILITY—INTOXICATION.**

One voluntarily intoxicated must exercise the degree of care in avoiding danger, as is exacted from a sober person of ordinary prudence under like circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 119, 120; Dec. Dig. § 88.*]

**10. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY CHARGE GIVEN.**

It is not error to refuse a requested charge fully covered in the charge given, so far as it is correct and applicable to the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**11. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.**

The error in permitting a witness for the successful party to testify that a witness of the defeated party was addicted to the use of morphine, without first laying a foundation for impeachment of the witness

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by having his attention called to it while testifying, was harmless, where the defeated party could not recover under the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma.

Action by Lizzie Winfrey against the Missouri, Kansas & Texas Railway Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

This was an action by Lizzie Winfrey, widow of William Winfrey, for damages occasioned to her by the death of her husband caused by the negligence of defendant Railway Company. The petition charges that the defendant received the deceased into one of its cars at Vinita, Okl., to be carried as a passenger to Blue Jacket, a station about 12 miles north of Vinita, knowing he was so intoxicated as to be incapable of adequately caring for himself; that, on arrival of the train at Blue Jacket, the agents of defendant, still knowing his condition of intoxication, failed to exercise the care and precaution required of them in advising him of the arrival of the train and assisting him to alight; that as a result he, when the train had started up after a brief stop at Blue Jacket, fell off the platform of the car, and in some way got upon the track after the train had passed, and was run over and killed by a south-bound train passing Blue Jacket over the same track about 20 minutes later. It is also alleged that the agents of the Railway Company in charge of the south-bound train negligently failed to maintain a proper lookout or to stop their train in time to avoid killing Winfrey. The defense was a denial of the alleged negligence and a plea of contributory negligence. On these issues the cause was tried, and resulted in a verdict and judgment for the defendant, from which the plaintiff prosecutes error. The evidence tended to show that Winfrey was with the knowledge of defendant's agents received aboard the train in an intoxicated condition, and continued drinking with two or three companions all the way from Vinita to Blue Jacket.

As to the degree of intoxication, whether it was so great as rendered him unable to properly care for himself, the witnesses differed materially. There was evidence tending to show that, as the train stopped at Blue Jacket, Winfrey and two of his companions arose from their seats, went out of the car upon the station platform in the usual way. On the other hand, there was evidence tending to show that Winfrey did not alight with his companions, but remained on the platform of the car until after the train started, and then fell or was jostled off that platform through a vestibule door which is said to have been left open. The evidence conclusively established that whether the deceased walked off the train with the other passengers or fell, as a result of his intoxication, he in some manner got upon the track, and within about 20 minutes was run over and killed by the south-bound train. There was no substantial evidence that the agents in charge of the south-bound train failed to give the usual signals of its approach to Blue Jacket or failed to maintain a proper lookout.

Upon this and other such evidence the case was submitted to the jury, and a verdict was rendered in favor of the defendant.

W. H. Kornegay, for plaintiff in error.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). The main theory of plaintiff's case as disclosed by the pleadings was that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant's agents in charge of the north-bound train knew of Winfrey's intoxicated and incapacitated condition, and did not exercise that degree of care required of them to remove him, or see that he was safely removed from the train, at his destination at Blue Jacket; and as a result that the train started while he was in a perilous position, and so known by defendant's agents, and caused him to fall or be precipitated upon the track, and that he was so injured by the fall or so paralyzed by his intoxication that he could not escape before the south-bound train overran him.

Another theory disclosed by the pleadings was that defendant's agents in charge of the south-bound train were guilty of actionable negligence, in that they so failed to keep a proper lookout, and so negligently operated their train as to occasion the injury and death of Winfrey.

The court charged the jury among other things as follows:

"If you find from the evidence that the deceased, William Winfrey, did not remain upon the train until after it started to leave the station of Blue Jacket, but left the train at Blue Jacket with the other passengers leaving the train at that point, and, instead of falling from the train, came upon the track in some other way, then your verdict should be for the defendant. * * * If the servants of the company whose duty it is to receive passengers on the trains accept one as a passenger who from drunkenness is unable to care for and look after himself, when such condition is known to them, then the railroad company owes him the duty to exercise with regard to such passenger such care as may be reasonably necessary for his safety, * * * [and] must bestow upon him any special care and attention beyond that given to the ordinary passenger, which reasonable prudence and care demand for his safety. * * * If its servants in charge of the passengers on such train, knowing the facts, fail to give such care and attention, and injury results as an immediate consequence of such failure, then the company is guilty of negligence. * * * If an intoxicated person * * * negligently places himself in a dangerous position, and his danger, by reason thereof, is known to the servants of the defendant in charge of the train, whose duty it is to take care of passengers, it then becomes their duty, notwithstanding his intoxication and its having caused him to become in a dangerous position, to use reasonable and ordinary care—that is, such care as a reasonably prudent person would use under the circumstances—to prevent injuring him. If his dangerous position is discovered, the fact that his negligence has placed him there would not warrant the defendant in not exercising with regard to him that care which it would exercise with regard to any other person, whom it was aware was in a similarly dangerous position. * * * As one of the defenses to this action, the defendant pleads contributory negligence. The plaintiff in this case cannot recover if the want of care or caution on the part of the deceased contributed proximately to his injury; but in such case the deceased would be guilty of what the law terms contributory negligence. * * * If from a preponderance of all the evidence offered by both the plaintiff and the defendant you find that the injury resulted in any degree from the plaintiff's contributory negligence, then your verdict should be for the defendant. * * * In considering the question of contributory negligence of the deceased, I charge you that a man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscle as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and thereby contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor. The law of contributory negligence imposes upon one who has voluntarily disabled himself by reason of intoxication the same degree of care and prudence which is required of a sober person. If the voluntary intoxication of a person leads him to place himself in an exposed position, or prevents the full use of his faculties, so that injury results there-

from, and but for such intoxication the injury would not have resulted, then such injured person is guilty of contributory negligence. The mere fact, however, that a person at the time he may receive an injury is intoxicated is not of itself evidence of contributory negligence, but is a circumstance to be considered, and it is for the jury to determine whether it in fact contributed to his injury."

Counsel for plaintiff took exceptions to the charge in these words:

"I * * * except to * * * that portion of your honor's charge withdrawing from the jury the question of the negligence of the defendant in the event it should be ascertained that the deceased got off the train at Blue Jacket."

"I desire * * * to except to that portion of your honor's charge upon the subject of contributory negligence, which instructs the jury that, if the injury resulted *in any degree* from the deceased's contributory negligence, this should be considered by the jury as cutting the plaintiff off from a right of recovery.

"I desire to except specially to that portion of your honor's charge upon the proposition of the plaintiff's voluntarily putting himself in the condition of intoxication, * * * [and of his] voluntarily placing himself in a position of danger, * * * as not being warranted * * * by the evidence."

I "desire also to except to that portion of your honor's charge which, by itself and uncoupled with the part which came later, told the jury that the same degree of care and prudence is required of a drunken man as of a sober man, for the reason that the same ignores the * * * helpless condition of a drunken man."

"I also desire your honor to instruct the jury that drunkenness itself is not contributory negligence, * * * [and] that drunkenness itself is not sufficient evidence of contributory negligence."

[1] We think there was no error in holding as a matter of law that if the deceased did not remain upon the train after it started to leave the station at Blue Jacket, but left it as other passengers did at that place, plaintiff could not recover. If those were the facts, the first and main specification of negligence could not have been the proximate cause of Winfrey being run over and killed by the southbound train. These being the facts, his death was not the natural and probable consequence of the alleged negligence of the agents in charge of the north-bound train; but some other and intermediate efficient cause must have produced it (Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256), and, as there was no evidence that the usual or statutory signals were not given or the proper outlook maintained as the south-bound train approached the station, the instruction was clearly right on any phase of the case.

[2] The next assignment of error is founded on the exception to the charge that, if the injury resulted *in any degree* from the deceased's contributory negligence, plaintiff could not recover. On this subject the court, after explaining what was meant by contributory negligence, charged not only that, if the injury to deceased resulted *in any degree* from any such contributory negligence, there could be no recovery, but that such negligence must have contributed proximately to his injury. We discover no error in this charge. It is in accord with the established doctrine of this court as announced in Pyle v. Clark, 25 C. C. A. 190, 79 Fed. 744, and Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 533, 63 C. C. A. 27, 31, and cases there cited, which declare the general rule that any negligence by a plaintiff

in a case directly contributing to his injury, precludes recovery by him however great the negligence of the defendant may have been.

[3] It is claimed, however, that this rule has been modified by the statute in Oklahoma, and attention is called to section 1149 of the Compiled Laws of that state (1909), which reads as follows:

"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except, so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

And also to sections 2938 and 2940 of the same compilation, which declare that there are three degrees of diligence and three degrees of negligence, namely, slight, ordinary, and great or gross. It is claimed that these three sections have modified the rule governing contributory negligence already referred to. But we do not so interpret them. If the Legislature had intended to modify that well-established rule, it could, and doubtless would, have used language clearly appropriate and efficacious to that end. Moreover, these statutes were originally enacted in 1890, and since then many cases involving the question of contributory negligence have arisen and been decided by the Supreme Court of the state or former Territory of Oklahoma, and notwithstanding the existence of these statutes the rigid rule of nonliability in case of any contributory negligence has been adhered to. Blevins v. A., T. & S. F. Co., 3 Okl. 512, 524, 41 Pac. 92; Pittman v. City of El Reno, 4 Okl. 638, 646, 46 Pac. 495; Severy v. C., R. I. & P. Ry. Co., 6 Okl. 153, 161, 50 Pac. 162. In the last-cited case the Supreme Court, referring to the general rule laid down on this subject by the Supreme Court of the United States in the case of Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, said:

"The rule thus laid down is a salutary one. * * * It is true that, where the doctrine of comparative negligence prevails, juries are permitted to measure the fault of each party contributing to the injury, and award damages against the party whose contribution to the cause of the injury appears the greater. But this is not the law in this territory."

[4, 5] The next exception to the charge is in the language of counsel as follows:

"To the proposition of deceased's voluntarily putting himself in a condition of intoxication * * * [or] danger, as not being warranted by the evidence."

One of the important purposes of exceptions to a charge is to call a trial judge's attention to specific phases, claimed to be erroneous, so that he may reconsider and correct them if he desires to do so before the jury retires. This general rule must, however, be applied practically with a view of facilitating rather than impeding review. Accordingly, if in an attempt to take an exception a general reference to a topic discussed in a charge is made, and if that topic constitutes a succinct and definite portion of the charge clearly distinguishable from and not involved in other portions, it would satisfy all rational requirements. But does the exception just quoted satisfy this demand? A large part of the charge consists of a consideration of the

general question referred to in the exception, and the question is variously commented upon in view of some particular phase of the testimony bearing upon it. In such circumstances we are unable to pass on an assignment founded on such an exception. We cannot do so without reviewing the entire charge in the light of all the evidence. This under well-recognized principles of practice we cannot do.

[6] We have, nevertheless, given careful attention to the charge as a whole, and discover that the court repeatedly told the jury in effect that if Winfrey was so intoxicated as to be physically unable to care for himself, and if this condition was known by defendant's agents in charge of the train, they were bound to bestow such care upon him as was reasonably necessary for his safety, and that if Winfrey was not in such a state of intoxication as rendered him unable to care for himself, or if the agents of the company did not know of his intoxicated condition, no such special care was required of him. This is the well-understood general rule governing such cases, and certainly the plaintiff could not have been prejudiced by its announcement and application to her case.

[7] The next assignment of error relates to contributory negligence broadly considered. Before taking it up, we may, in view of some observations in the brief of plaintiff in error, properly concede that if Winfrey was so intoxicated as to be unable to care for himself on the train, and if defendant's agents knew that he was in imminent danger or peril resulting from his condition of intoxication, the duty to exercise reasonable care and take proper precaution for his safety devolved upon the defendant, notwithstanding any contributory neglignce on his part. Price v. St. L., I. M. & S. Ry. Co., 75 Ark. 479, 88 S. W. 575, 112 Am. St. Rep. 79. This is a recognition of the law laid down in what are commonly known as the "last-clear chance" cases, which was invoked in plaintiff's petition so far as one phase of the negligence relied upon is concerned. The trial court recognized this law and instructed the jury accordingly. It told them, as already pointed out:

"If his dangerous position *is discovered*, the fact that his negligence has placed him there would not warrant the defendant in not exercising with regard to him that care which it would exercise with regard to any other person, whom it was aware was in a similarly dangerous position."

On the hypothesis just referred to and in the view we take of other phases of plaintiff's complaint, it is probably true that no issue of contributory negligence should have been submitted to the jury, but plaintiff's counsel asked no instruction to that end, and, so far as we can discover from the record, made no such point during the trial, but, on the contrary, requested instructions conditioning plaintiff's right of recovery upon Winfrey's having exercised ordinary care for his own protection. The case having been trial on the theory that Winfrey's contributory negligence would defeat plaintiff's recovery, and no suggestion having been made that that theory was inapplicable to any one or more phases of the case, we cannot hold that the

mere instruction of the jury on that subject, independent of what was said in the instruction, was erroneous. If it was in fact erroneous, it was an error invited or acquiesced in, and, therefore not reviewable.

The Supreme Court in Tweed's Case, 16 Wall. 504, 516, 21 L. Ed. 389, said:

"Courts are not inclined to grant a new trial merely on account of ambiguity in the charge of the court to the jury, where it appears that the complaining party made no effort at the trial to have the point explained."

[8] It remains, therefore, to consider the assignment of error taken to the court's charge as made concerning contributory negligence, and especially to that particular part of it which told the jury that the same degree of care and prudence is required of a drunken man as of a sober man, without in the same connection telling them to consider the helpless condition of a drunken man.

By referring to the charge as a whole on this subject, it will be seen that the court first dealt with the subject of defendant's liability for injury to a drunken passenger known by its agents to be in a dangerous position and helpless, in which the jury were told, in effect, that defendant would be liable notwithstanding the intoxication of the passenger if it failed to exercise toward him reasonable and ordinary care to prevent his injury. This fairly stated the law on the prominent phase of the case, and then, as if the minor phases of the case required instruction on the subject of contributory negligence, the court after properly defining it told the jury as follows:

"In considering the question of contributory negligence of the deceased, I charge you that a man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and thereby contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor."

And then amplified and explained the proposition as hereinbefore stated.

The court studiously limited the application of its charge on this subject of contributory negligence to those "ignorant of the condition" of the drunken man. In other words, it obviously undertook to advise the jury what the law was, not respecting those who knew Winfrey's perilous plight concerning which it had already fully charged the jury, but respecting those who were ignorant of his plight, manifestly referring to the agents of the south-bound train who were charged with negligent conduct in operating their train which actually ran over and killed Winfrey. Treating this matter, therefore, as an independent subject of inquiry, based, not on the last clear chance theory which had already been considered, but upon the primary negligence of the agents of the south-bound train, we discover no error in the charge of the court in this particular. It was fully as favorable to the plaintiff as the facts and pleadings of the case warranted.

[9] A drunken man must be held to the consequences of that condition. Otherwise a premium is put upon misbehavior. If he, by

voluntarily rendering himself unable to care for himself, can invite injury and recover from another ignorant of his condition therefor, notwithstanding his own direct contribution to the cause of it, the sober and careful man is put to a disadvantage in such cases. This seems and is unreasonable.

Hutchinson, in his work on Carriers (volume 3, par. 1230), announces this rule:

"Intoxication does not per se constitute contributory negligence, but is a matter to be taken into consideration as bearing on the question whether the passenger has, by his own conduct, brought the injury upon himself. The law exacts from one who is voluntarily intoxicated the same degree of care and caution in voiding an exposure of his person to danger as it exacts from a sober person of ordinary prudence under like circumstances."

Beach, in his work on Contributory Negligence, par. 391, says:

"Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication cum periculis."

In Trumbull v. Erickson, 38 C. C. A. 536, 97 Fed. 891, 893, Judge Caldwell, speaking for this court, said:

"The authorities are uniform that the mere fact that a person, when injured, was intoxicated, is not in itself evidence of contributory negligence, but that it is a circumstance to be considered in determining whether his intoxication contributed to his injury. If it did, he cannot recover. If it did not, it will not excuse the defendant's negligence."

To the same effect are Keeshan v. E. A. & S. Trac. Co., 229 Ill. 533, 82 N. E. 360, and Vizacchero v. Rhode Island Co., 26 R. I. 392, 59 Atl. 105, 69 L. R. A. 188.

[10] Other assignments of error relate to the refusal of the trial court to give certain instructions to the jury which were asked by plaintiff's counsel. These requested instructions have all been carefully considered in connection with what was said to the jury in the main charge, and we fail to find in them any correct principle of law applicable to the case under the pleadings and proof which was not fully covered in the charge. There was therefore no error in refusing to give them in the language requested.

[11] An exception was taken to permitting a witness for defendant to testify that one of the plaintiff's witnesses was addicted to the use of morphine. Whether this fact could have been proven as an independent fact by way of impeachment of plaintiff's witness without having called his attention to it while on the stand may be questioned, but it is obvious that this possible deviation from correct practice was without prejudice to plaintiff's rights under the pleadings and proof as made.

Finding no prejudicial error in the proceedings below the judgment is therefore affirmed.